**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DRINK LMNT, INC.<br><br>Plaintiff,<br><br>v.<br><br>LIVE OASIS, LLC, and<br>CORMAC HAYDEN,<br><br>Defendants. | ) | C.A. No. 26-0677-JLH |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR**
**MOTION TO TRANSFER AND MOTION TO DISMISS**

CONNOLLY GALLAGHER LLP

OF COUNSEL:

Jeremiah T. Reynolds
Eric C. Pettis
EISNER LLP
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
(310) 855-3200
jreynolds@eisnerlaw.com
epettis@eisnerlaw.com

Alan R. Silverstein (#5066)
1201 North Market Street, 20th Floor
Wilmington, DE 19801
(302) 757-7300
asilverstein@connollygallagher.com

*Attorneys for Defendants*
*Live Oasis, LLC and Cormac Hayden*

Dated: October 5, 2026

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................... iii

I. INTRODUCTION .................... 1

II. STATEMENT OF FACTS .................... 4

A. The Parties, the Oasis Platform, and the Challenged Statements .................... 4

B. The Alleged Conduct and Defendants' Operations Are Centered in California .................... 4

C. LMNT's Alleged Commercial Harm and Business Relationships .................... 5

III. LEGAL STANDARDS .................... 5

IV. ARGUMENT .................... 6

A. Venue Is Improper in Delaware, and the Action Should Be Transferred to the Central District of California Under § 1406(a) .................... 6

1. Section 1391(b)(1) Does Not Support Venue Because Hayden Resides in California .................... 6

2. No Substantial Part of the Events Giving Rise to LMNT's Claims Occurred in Delaware .................... 6

3. Section 1391(b)(3) Does Not Apply Because This Action Could Have Been Brought in California .................... 7

B. Alternatively, the Court Should Transfer the Action to the Central District of California Under § 1404(a) .................... 8

1. The Jumara Private-Interest Factors Favor California .................... 8

2. The Jumara Public-Interest Factors Favor California .................... 9

C. The Claims Against Hayden Should Be Dismissed for Lack of Personal Jurisdiction .................... 9

D. Several Counts Are Subject to Dismissal as to Both Defendants Under Rule 12(b)(6) .................... 11

1. The Lanham Act Claims Should Be Dismissed Because the Challenged Statements Are Not "Commercial Advertising or Promotion" .................... 11

2. Count III Should Be Dismissed Because LMNT Does Not Adequately Plead the Pecuniary Loss Required for Trade Libel .................... 13

3. Count IV Fails to Plead Oasis's Knowledge or a Reasonably Probable Business Opportunity .................... 15

4. Count V Should Be Dismissed Because the Delaware DTPA Does Not Reach the California Conduct Alleged ....17

5. LMNT Cannot Recover the Restitution It Seeks Under Count VI....18

E. A § 1406(a) Transfer Subjects the December 2024 Publication to California's One-Year Defamation Limitations Period ....18

V. CONCLUSION....20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amendt*,
169 F. App'x 93 (3d Cir. 2006) ....9

*American High-Income Tr. v. AlliedSignal Inc.*,
2002 WL 373473 (D. Del. Mar. 7, 2002) ....7

*Ariix, LLC v. NutriSearch Corp.*,
985 F.3d 1107 (9th Cir. 2021) ....13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....6

*Bockman v. First Am. Mktg. Corp.*,
459 F. App'x 157 (3d Cir. 2012) ....5

*Bos. Sci. Corp. v. Cook Grp. Inc.*,
269 F. Supp. 3d 229 (D. Del. 2017)....7

*Ceradyne, Inc. v. RLI Ins. Co.*,
2021 WL 3145171 (D. Del. July 26, 2021) ....9

*Chow v. Canyon Bridge Capital Partners, LLC*,
2024 WL 3510917 (D. Del. July 22, 2024) ....10

*Christ v. Cormick*,
2007 WL 2022053 (D. Del. July 10, 2007) ....10

*CLP Toxicology, Inc. v. Casla Bio Holdings LLC*,
2020 WL 3564622 (Del. Ch. June 29, 2020)....10

*Cottman Transmission Sys., Inc. v. Martino*,
36 F.3d 291 (3d Cir. 1994)....6

*Endowment Rsch. Grp., LLC v. 23 Wildcat Venture P'rs, LLC*,
2021 WL 841049 (Del. Ch. Mar. 5, 2021)....10

*Facenda v. N.F.L. Films, Inc.*,
542 F.3d 1007 (3d Cir. 2008)....12

*Focus Financial Partners, LLC v. Holsopple*,
250 A.3d 939 (Del. Ch. 2020)....17

*GOLO, LLC v. HighYa, LLC*,
310 F. Supp. 3d 499 (E.D. Pa. 2018) ....................12, 13

*Hasson v. FullStory, Inc.*,
114 F.4th 181 (3d Cir. 2024) ....................11

*IMO Indus., Inc. v. Kiekert AG*,
155 F.3d 254 (3d Cir. 1998)....................11

*Incyte Corp. v. Flexus Biosciences, Inc.*,
2017 WL 7803923 (Del. Super. Ct. Nov. 1, 2017)....................13, 14

*Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*,
12 F. Supp. 2d 1035 (C.D. Cal. 1998) ....................14

*JPMorgan Chase Bank, Nat'l Assoc. v. Argus Info, & Advisory Servs. Inc.*,
765 F.Supp.3d 367 (D. Del. Feb. 5, 2025)....................17

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995)....................2, 5, 8, 9

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ....................15, 16, 18

*Lafferty v. St. Riel*,
495 F.3d 72 (3d Cir. 2007)....................18

*Madrid v. Perot Sys. Corp.*,
130 Cal. App. 4th 440 (2005) ....................18

*Magazu v. Chileno Bay Fam. Off., LLC*,
2026 WL 883984 (D. Del. Mar. 31, 2026) ....................10

*Metcalfe v. Renaissance Marine, Inc.*,
566 F.3d 324 (3d Cir. 2009)....................6

*Mitel Networks Corp. v. Facebook, Inc.*,
943 F. Supp. 2d 463 (D. Del. 2013)....................8

*Next Level Ventures, LLC v. AVID USA Techs. LLC*,
2023 WL 3141054 (Del. Ch. Mar. 16, 2023)....................10

*Oldham v. Pa. State Univ.*,
138 F.4th 731 (3d Cir. 2025) ....................19

*Organovo Holdings, Inc. v. Dimitrov*,
162 A.3d 102 (Del. Ch. 2017)....................16

*Parts Geek, LLC v. U.S. Auto Parts Network, Inc.*,
2010 WL 1381005 (D.N.J. Apr. 1, 2010) ....................9

*Reading Health Sys. v. Bear Stearns & Co.*,
900 F.3d 87 (3d Cir. 2018)....................6

*Roth v. Rhodes*,
25 Cal. App. 4th 530 (1994) ....................16

*Rudolph v. HR Specialist, Inc.*,
37 F. Supp. 3d 740 (D. Del. 2014)....................7

*Ryanair DAC v. Booking Holdings Inc.*,
2023 WL 2867476 (D. Del. Apr. 7, 2023)....................14

*Shively v. Bozanich*,
31 Cal. 4th 1230 (2003) ....................19

*Sports Eye, Inc. v. Daily Racing Form, Inc.*,
565 F. Supp. 634 (D. Del. 1983)....................8

*Stoltz Management of Delaware, Inc. v. Entrata, Inc.*,
2026 WL 252662 (Del. Super. Ct. Jan. 30, 2026) ....................17

*Tobinick v. Novella*,
848 F.3d 935 (11th Cir. 2017) ....................12

*Total Care Physicians, P.A. v. O'Hara*,
798 A.2d 1043 (Del. Super. Ct. 2001) ....................17

*Traditional Cat Ass'n, Inc. v. Gilbreath*,
118 Cal. App. 4th 392 (2004) ....................19, 20

*U.S. Bank Nat'l Ass'n v. Gunn*,
23 F. Supp. 3d 426 (D. Del. 2014)....................15

*U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*,
898 F.2d 914 (3d Cir. 1990)....................12

*Valnet Inc. v. The Wrap News Inc.*,
2025 WL 3770176 (D. Del. Dec. 31, 2025)....................8

**Statutes**

15 U.S.C. § 1125(a)(1)(B) ....................11

28 U.S.C. § 1404(a) .................... *passim*

28 U.S.C. § 1406(a) .................... *passim*

Cal. Bus. & Prof. Code § 17200 *et seq.* .......... 18

Cal. Civ. Code § 3425.3 .......... 19

Cal. Code Civ. Proc. § 340(c) .......... 19

Delaware Deceptive Trade Practices Act, 6 *Del. C.* § 2531 *et seq.* .......... 17

Delaware Limited Liability Company Act §18-109 .......... 10

Delaware's Deceptive Trade Practices Act .......... 3

Delaware Uniform Trade Secrets Act .......... 17

Lanham Act .......... 2, 11, 12

**Other Authorities**

Fed. R. Civ. P. 9(g) .......... 2, 13, 14

Fed. R. Civ. P. 12(b)(2) .......... 5, 11, 20

Fed. R. Civ. P. 12(b)(3) and § 1406(a) .......... 5

Fed. R. Civ. P. 12(b)(6) .......... 6, 11, 17, 20

## I. INTRODUCTION

Drink LMNT, Inc. ("LMNT") opens its Complaint with a provocative account of a purportedly "fear-driven ratings app" built to manufacture controversy for profit. But even LMNT's own pleading describes Oasis as a consumer-information platform that publishes product ratings and laboratory information, invites users to "See what's really inside," and discloses that affiliate links help fund the project. Oasis does not compete with LMNT. It does not manufacture electrolyte products or sell a drink mix. Its premise is transparency: gather information about what is in consumer products, make that information accessible, and let consumers decide what to do with it. That model can place Oasis at odds with the manufacturers whose products it examines, as this case illustrates.

Even taking LMNT's allegations at face value, the dispute belongs in California, not Delaware. Oasis is based in California. Hayden is domiciled there. And LMNT itself alleges, in support of its California UCL claim, that "[t]he conduct giving rise to this claim originated in California," where Hayden operates Oasis and from where LMNT alleges he published the challenged statements. Delaware appears in the venue paragraph because Oasis was organized there and the publications were "accessible and accessed" there. But neither of those rationale means that a substantial part of the events giving rise to this dispute occurred in Delaware. Venue is therefore improper, and the Court should transfer the action to the Central District of California under 28 U.S.C. § 1406(a).

Even if the Court concludes that venue is technically proper, the same facts favor transfer under 28 U.S.C. § 1404(a). LMNT's choice of Delaware deserves appropriate weight, but it is not dispositive. LMNT is headquartered in Florida; Defendants are located in California; the challenged activity is centered in California; the material witnesses are in California; and no

relevant events occurred in Delaware. California also has a stronger local interest in adjudicating the claims; the *Jumara* factors therefore favor transfer.

Only if the case remains in Delaware should the Court reach the remaining jurisdictional and pleading defects:

*First*, the claims against Hayden should be dismissed for lack of personal jurisdiction. LMNT relies on Hayden's status as the Managing Member of a Delaware LLC, but that status is incidental to the alleged wrongdoing. The claims do not arise from Oasis's governance, a Delaware-centered transaction, or any exercise of managerial authority directed toward Delaware. They arise from alleged torts in California, and the Complaint does not identify any conduct purposefully directed at Delaware. Hayden's status as manager of a Delaware entity therefore does not supply the due-process nexus necessary to exercise personal jurisdiction over him here.

*Second*, the Lanham Act claim fails because the challenged statements are not "commercial advertising or promotion." The Complaint describes product scores, laboratory interpretations, and commentary about product safety published on a monetized review platform. Allegations that such content attracts users and generates subscription or affiliate revenue may establish an economic motive to publish; they do not transform the publications themselves into advertisements. LMNT admits that Oasis may earn affiliate revenue regardless of which product a consumer buys, and the Complaint identifies no financial incentive for Oasis to favor any brand over another. LMNT has not alleged enough to maintain a Lanham Act claim.

*Third*, the trade-libel claim does not adequately plead a special pecuniary loss. LMNT alleges "lost sales," "lost customers," and damaged commercial relationships, but identifies no lost customer, lost sale, measurable sales decline, or other facts showing a quantifiable loss attributable to the challenged statements. Rule 9(g) requires more.

*Fourth,* the tortious-interference claim fails because LMNT does not allege that Defendants knew of the unidentified sponsorship opportunity before publishing the challenged statements. Nor does LMNT identify a concrete, reasonably probable business relationship: its allegations concerning customers, consumers, and retail and distribution partners are generic, and its unidentified sponsorship allegation too vague to stand on its own.

*Fifth*, LMNT cannot use Delaware's Deceptive Trade Practices Act to regulate conduct occurring outside Delaware. It identifies no deceptive act undertaken in Delaware. To the contrary, the Complaint alleges that Hayden operates Oasis and its social-media accounts from California and published the challenged statements from Santa Monica. And DTPA does not extend beyond Delaware merely because Oasis was organized there.

*Finally,* LMNT cannot recover Oasis's subscription or affiliate revenues as restitution under the California UCL. Those revenues came from subscribers and other third parties, not LMNT, and the Complaint does not allege that LMNT ever owned or had a vested interest in them. They are therefore nonrestitutionary disgorgement, which the UCL does not allow.

A § 1406(a) transfer has one additional consequence: the transferee court would apply California choice-of-law rules and California's one-year limitations period for defamation. LMNT alleges that the first challenged statement occurred on December 16, 2024, but did not file this action until June 10, 2026. Count II is therefore time-barred as to the December 2024 publication, and LMNT cannot avoid that result by relying on the publication's continued accessibility, which does not restart the limitations period.

At bottom, the Complaint does not support the case LMNT purports to plead. Its own allegations place the dispute in California, and several of its claims fall short of the jurisdictional, substantive, or remedial requirements imposed by governing law. Transfer to the Central District

of California is therefore appropriate under § 1406(a), or alternatively § 1404(a), and the deficient claims should be dismissed.

## II. STATEMENT OF FACTS

### A. The Parties, the Oasis Platform, and the Challenged Statements

LMNT sells electrolyte drink mixes. Compl. ¶¶ 6, 28. It is organized in Delaware and headquartered in Florida. Compl. ¶ 19. Oasis is a Delaware LLC headquartered in California, and Cormac Hayden, its founder and Managing Member, is domiciled in California. *Id*. ¶¶ 20-21.

Oasis operates a product rating website and mobile application that rates consumer food, beverage, and supplement products based on laboratory testing and ingredient analysis. Compl. ¶ 29. Oasis generates revenue through app subscriptions and affiliate commissions earned when users purchase products through links in the application. *Id*. ¶¶ 36, 40-41.

LMNT challenges two Oasis statements: a December 16, 2024 publication concerning lead in an LMNT product, and a May 20, 2026 publication concerning LMNT's product score. Compl. ¶¶ 47-57, 91, 107, 122.

### B. The Alleged Conduct and Defendants' Operations Are Centered in California

Oasis is organized as a Delaware limited liability company, and has its principal place of business in California, and Hayden is domiciled in California. Compl. ¶¶ 20-21, 26. Hayden personally operates Oasis's application and social-media accounts, and authored and published the challenged statements. *Id.* ¶¶ 33, 170.

Oasis has no office or operations in Delaware. Declaration of Cormac Hayden ("Hayden Decl.," filed herewith) ¶ 3. No person working for Oasis performed any work related to the challenged statements in Delaware. *Id.* ¶ 4. The individuals with material knowledge concerning Oasis's laboratory-data review, scoring methodology, publication workflow, and correction

process are located in California. *Id.* ¶ 7. Oasis's relevant records are maintained electronically and are accessible from California; Oasis maintains no physical repository of relevant records in Delaware. *Id.* ¶ 6.

**C. LMNT's Alleged Commercial Harm and Business Relationships**

LMNT alleges that the challenged statements caused lost sales, lost customers, and harm to LMNT's business and commercial relationships, "in an amount to be proven at trial," but does not identify any particular lost sale or customer. *See* Compl. ¶¶ 141, 150, 157. LMNT also alleges interference with "existing and prospective customers and partners in the electrolyte and sports nutrition market," including its "national customer base of health-conscious consumers." *Id.* ¶ 153.

## III. LEGAL STANDARDS

When venue is improper, Rule 12(b)(3) and § 1406(a) permit dismissal or, "if it be in the interest of justice," transfer to a district where the action could have been brought. 28 U.S.C. § 1406(a). Defendants bear the burden of showing that venue is improper. *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 160 (3d Cir. 2012). The Court generally accepts the Complaint's well-pleaded venue allegations unless contradicted by Defendants' evidence and may consider affidavits and other materials outside the pleadings. *Id.* at 158 n.1.

If venue is proper, § 1404(a) permits transfer for convenience and the interest of justice. In determining whether transfer is appropriate, courts assess private factors such as forum preferences, where the claims arose, party and witness convenience, and records, and public factors including practical considerations, local interests, court congestion, public policy, enforceability, and familiarity with governing law. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).

On a Rule 12(b)(2) motion, once defendant has raised a jurisdiction defense, plaintiff must

provide by competent evidence that jurisdiction is proper. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330-31 (3d Cir. 2009). On a Rule 12(b)(6) motion, the Court accepts well-pleaded allegations but not legal conclusions, and asks whether the complaint contains sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The Court may resolve transfer before jurisdiction or the merits. *See Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 94-96 (3d Cir. 2018).

## IV. ARGUMENT

### A. Venue Is Improper in Delaware, and the Action Should Be Transferred to the Central District of California Under § 1406(a)

#### 1. Section 1391(b)(1) Does Not Support Venue Because Hayden Resides in California

Section 1391(b)(1) permits venue where any defendant resides only "if all defendants are residents of the State in which the district is located." Hayden is domiciled in California. Compl. ¶ 21. Thus all defendants are not Delaware residents, and § 1391(b)(1) does not support venue in Delaware.

#### 2. No Substantial Part of the Events Giving Rise to LMNT's Claims Occurred in Delaware

Section 1391(b)(2) focuses on the "events or omissions giving rise to the claim." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 293-95 (3d Cir. 1994) ("Events or omissions that might only have some tangential connection with the dispute in litigation are not enough."). Here, the alleged events underlying LMNT's claims are centered in California. Oasis has its principal place of business there, and Hayden is domiciled there. Compl. ¶¶ 20-21. LMNT alleges that Hayden personally operates Oasis's social-media accounts and authored and published the challenged statements from California. *Id.* ¶¶ 33, 170. Hayden's declaration confirms that no testing, review, product scoring, drafting, editing, publication, maintenance, correction, or removal

decisions concerning the challenged statements occurred in Delaware. Hayden Decl. ¶ 4.

That Oasis was incorporated in Delaware does not change the analysis. *Rudolph v. HR Specialist, Inc.*, 37 F. Supp. 3d 740, 744-46 (D. Del. 2014) (finding venue improper where only one defendant was a Delaware corporation and "there are no allegations that any of the events at issue took place in Delaware"); *American High-Income Tr. v. AlliedSignal Inc.*, 2002 WL 373473, at *3-4 (D. Del. Mar. 7, 2002) (transferring where "it is doubtful that any part, let alone a substantial part, of the relevant events occurred in Delaware"). Nor does the fact that Oasis's posts were accessible nationwide make a Delaware forum proper. *See Bos. Sci. Corp. v. Cook Grp. Inc.*, 269 F. Supp. 3d 229, 248 (D. Del. 2017) ("Just as maintaining a website that allows a consumer anywhere to purchase a defendant's goods is not sufficient for venue purposes under § 1400(b), neither is shipping a product that such a consumer ordered (over the internet, for instance) sufficient.").

### 3. Section 1391(b)(3) Does Not Apply Because This Action Could Have Been Brought in California

Section 1391(b)(3) applies only if no district is available under § 1391(b)(1) or (2). The Central District of California is available under §§ 1391(b)(1) and (b)(2): Hayden is domiciled in California, Oasis is based there, and LMNT alleges that publication occurred in Santa Monica. Compl. ¶¶ 20-21, 33, 170.

* * *

Because venue is improper in Delaware under each subsection of § 1391(b), and the Central District of California is a proper venue for this dispute, the Court should transfer the action there in the interest of justice under § 1406(a).

### B. Alternatively, the Court Should Transfer the Action to the Central District of California Under § 1404(a)

#### 1. The *Jumara* Private-Interest Factors Favor California

LMNT's choice of Delaware is entitled to appropriate consideration. *See Jumara*, 55 F.3d at 879. But that factor is not dispositive. *See Valnet Inc. v. The Wrap News Inc.*, 2025 WL 3770176, at *1 (D. Del. Dec. 31, 2025). And, because LMNT is headquartered in Florida and the operative events occurred elsewhere, its choice is given less weight. Compl. ¶¶ 19-21, 33, 170; *see Sports Eye, Inc. v. Daily Racing Form, Inc.*, 565 F. Supp. 634, 637-39 (D. Del. 1983) ("the choice of forum factor is of diminished importance where, as here, the plaintiff is not litigating on its 'home turf'"). By contrast, Defendants' forum preference and the locus of the claims favor California: Hayden resides there, Oasis operates there, and the challenged activity is tied to California. Compl. ¶¶ 20-21, 33, 170; *see Valnet Inc.*, 2025 WL 3770176 at *1 (transfer appropriate where "Defendant prefers to litigate in California; and the events giving rise to the claim happened in California"). Nor does the parties' Delaware organization tip the balance: neither side has offices, employees, or operations here, and nothing about the challenged statements turn on Delaware entity law. *Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 476 (D. Del. 2013) ("that neither party operates nor has facilities, offices, or employees in Delaware … favor[s] transfer").

The remaining private factors are neutral or favor California. Neither party is headquartered in Delaware, while both Defendants are located in California. Hayden is an individual who would have to defend across the country, while LMNT is headquartered in Florida, and must travel to either forum. Material witnesses concerning Oasis's scoring, laboratory-data review, publication process, and corrections are located in California, not Delaware. Hayden Decl. ¶ 7; *see Jumara*, 55 F.3d at 879 (considering whether "witnesses may actually be unavailable for trial in one of the fora"). Relevant records are maintained electronically and are accessible from California, and

Oasis maintains no physical repository of relevant records in Delaware. Hayden Decl. ¶ 6.

#### 2. The *Jumara* Public-Interest Factors Favor California

Practical considerations and local interests likewise favor California. Oasis operates there, Hayden resides there, and the challenged conduct occurred there. Compl. ¶¶ 20-21, 33, 170; Hayden Decl. ¶¶ 2-4. California accordingly has a substantial interest in resolving claims arising from allegedly wrongful acts by California-based actors, reinforced by LMNT's California UCL claim; the Delaware DTPA claim does not create a comparable forum interest because, as discussed below, it fails as a matter of law. *See Ceradyne, Inc. v. RLI Ins. Co.*, 2021 WL 3145171, at *8 (D. Del. July 26, 2021) ("when the alleged wrongdoing occurs in another jurisdiction…the other jurisdiction has a stronger interest in deciding the dispute"); *Parts Geek, LLC v. U.S. Auto Parts Network, Inc.,* 2010 WL 1381005, at *9 (D.N.J. Apr. 1, 2010) ("California's interest in deciding this matter is substantial because the alleged wrongful acts occurred there.")

Practical considerations favor transfer for a further reason: the Central District of California is the only forum where LMNT's claims against both Defendants can be resolved in one proceeding. As shown in Section IV.C below, Hayden is not subject to personal jurisdiction in Delaware. Transfer avoids that dispute and the risk of parallel litigation. *In re Amendt*, 169 F. App'x 93, 96 (3d Cir. 2006) ("Adjudicating almost identical issues in separate fora would waste judicial resources.").

Taken together, and giving LMNT's forum choice appropriate weight, the *Jumara* factors favor transfer, and the Court should transfer this action to the Central District of California under § 1404(a).

### C. The Claims Against Hayden Should Be Dismissed for Lack of Personal Jurisdiction

LMNT's jurisdictional theory rests on Hayden's status as Oasis's Managing Member and

his participation in the management of a Delaware LLC. Compl. ¶ 26. But §18-109 of the Delaware Limited Liability Company Act does not create jurisdiction over a nonresident manager whenever the plaintiff sues over something the manager did for a Delaware LLC. Delaware courts construe the statute narrowly to reach claims concerning the LLC's internal affairs or corporate governance, not ordinary tort or commercial claims involving third parties. *See Endowment Rsch. Grp., LLC v. 23 Wildcat Venture P'rs, LLC*, 2021 WL 841049, at *5 (Del. Ch. Mar. 5, 2021); *CLP Toxicology, Inc. v. Casla Bio Holdings LLC*, 2020 WL 3564622, at *12 (Del. Ch. June 29, 2020). LMNT's claims concern outward-facing publications, product ratings, alleged marketplace injury, platform revenue, and third-party business relationships. They do not concern Oasis's internal affairs, Hayden's governance duties, or ownership or control of Oasis. Section 18-109 therefore does not supply jurisdiction over Hayden.

In any event, even if LMNT could bring its claims within § 18-109, the exercise of jurisdiction still must comport with due process. *See Next Level Ventures, LLC v. AVID USA Techs. LLC*, 2023 WL 3141054, at *19-21 (Del. Ch. Mar. 16, 2023); *Magazu v. Chileno Bay Fam. Off., LLC,* 2026 WL 883984, at *4 (D. Del. Mar. 31, 2026) (dismissal of defendant-manager appropriate where there was "limited connections between [defendant], the underlying claims, and the State of Delaware").

That due-process nexus is absent here. The cases finding jurisdiction under § 18-109 involve contact with Delaware beyond the defendant's mere status as manager of a Delaware LLC, such as using the formation or structure of the Delaware entity as part of the alleged wrongdoing, or invoking Delaware law and engaging in Delaware-focused conduct to effect changes in ownership and control. *See Christ v. Cormick*, 2007 WL 2022053, at *5 (D. Del. July 10, 2007); *Chow v. Canyon Bridge Capital Partners, LLC*, 2024 WL 3510917, at *12 (D. Del. July 22, 2024).

Here, Hayden's status as manager of a Delaware LLC is incidental to the alleged wrongdoing.

The Complaint instead locates the relevant conduct in California. Hayden resides there, Oasis operates there, and LMNT alleges that Hayden operates the Oasis App and associated social-media accounts from California and published the challenged statements from Santa Monica. Compl. ¶¶ 20-21, 33, 170; Hayden Decl. ¶¶ 2-4. Neither Hayden nor Oasis undertook any Delaware-specific activity relating to LMNT or the challenged statements, and the challenged statements were not prepared, published, or directed specifically to Delaware residents or a Delaware audience. Hayden Decl. ¶ 5. The mere accessibility of those publications in Delaware does not establish the required minimum contacts. *See Hasson v. FullStory, Inc.*, 114 F.4th 181, 190-92 (3d Cir. 2024) (holding that a website's accessibility in Pennsylvania, without more, did not establish minimum contacts with the forum).

Nor can LMNT rely on alleged injury to a Delaware corporation. The "effects test" requires that the defendant "expressly aimed" his conduct at the forum, making it the focal point of the tortious activity. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998). The Complaint alleges that Oasis publishes its content nationwide, not that it directed it at Delaware. Compl. ¶ 127.

Therefore, if the action remains in this District, the claims against Hayden should be dismissed under Rule 12(b)(2).

### D. Several Counts Are Subject to Dismissal as to Both Defendants Under Rule 12(b)(6)

#### 1. The Lanham Act Claims Should Be Dismissed Because the Challenged Statements Are Not "Commercial Advertising or Promotion"

Section 43(a)(1)(B) only reaches false representations "in commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). In determining whether speech is commercial, the Third Circuit makes a "commonsense distinction between speech proposing a commercial transaction

… and other varieties of speech," considering whether the speech is an advertisement, refers to a specific product or service, and is economically motivated. *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1017 (3d Cir. 2008); *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 933 (3d Cir. 1990).

Applying this framework, courts have declined to treat product reviews as commercial advertising merely because the publisher monetizes the platform. In *GOLO, LLC v. HighYa, LLC*, 310 F. Supp. 3d 499, 504-07 (E.D. Pa. 2018), the district court confronted allegedly false online product reviews published by websites that generated revenue from advertising, one of which also maintained marketing affiliations with certain product suppliers. *Id.* The court dismissed the Lanham Act claims because the challenged reviews were editorial content, not commercial speech: they did not promote a competing product or propose a commercial transaction, and the website's economic motive did not transform their reviews into advertising. *Id.* Other courts likewise distinguish monetized editorial commentary from commercial speech. *See, e.g., Tobinick v. Novella,* 848 F.3d 935, 950-52 (11th Cir. 2017) (affirming dismissal of Lanham Act claim where challenged articles did not propose a commercial transaction, despite the website's advertising and subscription revenue).

Here, while the Complaint alleges that Oasis monetizes its platform, it does not allege that the challenged statements themselves functioned as advertisements or propose a commercial transaction. The challenged statements are product scores, laboratory interpretations, and commentary about product safety. Compl. ¶¶ 47-57, 91, 107, 122. LMNT alleges that controversial content attracts attention, drives app downloads and subscriptions, and may produce affiliate revenue. *Id.* ¶¶ 36-46. But those allegations describe an economic motive for publishing content; they do not make the content an advertisement. That is the same distinction drawn in *GOLO*: the

challenged reviews analyzed a product, and the publisher's revenue model did not transform that editorial content into commercial advertising. *See GOLO*, 310 F. Supp. 3d at 504-07.

The affiliate allegations reinforce that distinction. LMNT alleges that Oasis embeds referral links on LMNT's own product pages and may earn a commission whether the consumer ultimately purchases LMNT or another product. Compl. ¶ 38. That model cuts against any inference that the challenged statements were stealth advertisements designed to steer consumers toward a particular competing manufacturer. *Cf. Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1117-20 (9th Cir. 2021) (holding commercial speech plausibly alleged where an allegedly independent review publisher favored a manufacturer that paid substantial speaking and promotional fees). And the Complaint itself quotes Oasis's disclosure that "[w]e never do paid sponsorships, ads or any type of paid promotion," while explaining that affiliate links help fund the project. *Id.* ¶¶ 40-41.

LMNT's theory ultimately conflates an economic motive to publish content with the "commercial advertising or promotion" required by § 43(a)(1)(B). The Complaint describes a monetized review platform—not advertising. Because those allegations do not plausibly show that the challenged statements themselves proposed a commercial transaction or functioned as advertising or promotion, Count I should be dismissed.

**2. Count III Should Be Dismissed Because LMNT Does Not Adequately Plead the Pecuniary Loss Required for Trade Libel**

Whether Delaware or California law governs,[1] trade libel requires special pecuniary loss. Under Delaware law, pecuniary loss is an essential element of trade libel or injurious falsehood. *See Incyte Corp. v. Flexus Biosciences, Inc.*, 2017 WL 7803923, at *7 (Del. Super. Ct. Nov. 1,

[1] Defendants believe California law governs because the challenged conduct occurred in California, but the Court need not decide because Delaware and California both require special pecuniary loss and Rule 9(g) governs pleading specificity in either event.

2017); *Ryanair DAC v. Booking Holdings Inc.*, 2023 WL 2867476, at *8-9 (D. Del. Apr. 7, 2023). California law imposes the same requirement. *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1043 (C.D. Cal. 1998) ("a cause of action for damages for trade libel requires pleading and proof of special damages in the form of pecuniary loss"). And regardless of which State's substantive law applies, Federal Rule 9(g) requires any item of special damages to be "specifically stated." Fed. R. Civ. P. 9(g).

LMNT does not plead the required special pecuniary loss with the specificity Rule 9(g) demands. Paragraph 150 alleges only "lost sales, lost customers, and damage to [LMNT's] business and commercial relationships, in an amount to be proven at trial." Compl. ¶ 150. Those are generalized categories of commercial injury, not the specific special damages Rule 9(g) requires. The Complaint does not identify any lost customer or sale, allege sales data showing a measurable decline, or plead other facts from which the claimed loss can be measured and tied to the challenged statements. *Isuzu Motors Ltd.*, 12 F. Supp. 2d at 1047 (applying Rule 9(g) and dismissing claim where allegation that plaintiff "suffered and continues to suffer special damages from loss of revenue from wholesale and retail sales" was insufficiently specific). The lone specific allegation, that an unidentified "prospective sponsorship partner declined to move forward," does not fill the gap. LMNT does not identify the partner, say whether LMNT was to pay or be paid, or allege any amount lost. Compl. ¶ 55.

Rule 9(g) requires the facts constituting the claimed special damages to be specifically pleaded, not deferred to discovery or an "amount to be proven at trial." Because pecuniary loss is an essential element of trade libel and the Complaint does not plead that loss with the required specificity, Count III should be dismissed. *See Incyte Corp.*, 2017 WL 7803923, at *7; *Isuzu Motors Ltd.*, 12 F. Supp. 2d at 1047.

### 3. Count IV Fails to Plead Oasis's Knowledge or a Reasonably Probable Business Opportunity

Count IV fails at the threshold because the Complaint does not allege that Defendants knew of any specific business relationship or opportunity with which they allegedly interfered. Both Delaware and California law[2] require knowledge of the prospective relationship or opportunity. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (requiring "defendant's knowledge of the relationship"); *U.S. Bank Nat'l Ass'n v. Gunn*, 23 F. Supp. 3d 426, 436 (D. Del. 2014) ("The interferer must also have 'knowledge of the relationship or expectancy.'")

The Complaint's allegations do not satisfy that requirement. Paragraph 154 alleges only a generalized intent to divert consumers and disrupt LMNT's business, while paragraph 156 alleges that an unidentified sponsorship partner later encountered the challenged statements and declined to proceed. Compl. ¶¶ 154, 156. Neither alleges that Defendants knew of that sponsorship opportunity before publishing the challenged content. Count IV can be dismissed for that reason alone.

Count IV also fails to plead a reasonably probable business opportunity. LMNT alleges interference with a broad universe of existing and prospective customers, retail and distribution partners, and other participants in the electrolyte and sports-nutrition market without naming a single person or entity or the circumstances surrounding such business opportunity. Compl. ¶ 153. Those allegations are insufficient under either California or Delaware law. California requires "an economic relationship between the plaintiff and some third party, with the probability of future

[2] Defendants submit that California law governs this claim because the alleged interference arises from conduct undertaken in California by California-based Defendants. *See* Compl. ¶¶ 20-21, 33, 170. The Court need not resolve that choice-of-law question at this stage, however, because Count IV fails under either California or Delaware law for the reasons described herein.

economic benefit to the plaintiff." *Korea Supply Co.*, 29 Cal. 4th at 1153. Delaware similarly requires "the reasonable probability of a business opportunity." *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 122 (Del. Ch. 2017). Under either standard, a generalized expectation of future business is not enough. *See id*. ("vague statements about unknown customers" and allegations regarding a "'nebulous, unascertainable class' of business relationships" insufficient); *see also Roth v. Rhodes*, 25 Cal. App. 4th 530, 546 (1994) (requiring a "specific economic relationship with which [defendant] interfered").

The Complaint does not plead such a relationship. It identifies LMNT's existing national customer base, consumers "actively researching electrolyte products," and "reasonably probable business opportunities" whose decisions may be influenced by perceptions of product safety. Compl. ¶ 153. Those allegations are too vague under any standard. LMNT's allegations related to an unidentified "prospective sponsorship partner" does not cure the deficiency. *See* Compl. ¶ 156. LMNT alleges only that the partner "declined to move forward" after it encountered Oasis's challenged statements. *Id.* The Complaint does not state any other facts from which the Court could infer that the relationship was reasonably probable. *See Organovo*, 162 A.3d at 122; *Korea Supply Co.*, 29 Cal. 4th at 1153.

Count IV should therefore be dismissed for two independent reasons: LMNT does not allege that Defendants knew of the business relationship they supposedly disrupted, and it does not plead facts establishing that the alleged opportunity was reasonably probable rather than merely possible.

### 4. Count V Should Be Dismissed Because the Delaware DTPA[3] Does Not Reach the California Conduct Alleged

Count V invokes the Delaware Deceptive Trade Practices Act, 6 *Del. C.* § 2531 *et seq.*, based on the challenged statements. Compl. ¶¶ 158-67. But the Complaint does not identify any deceptive act undertaken in Delaware. To the contrary, LMNT alleges that Hayden operates Oasis and its associated social-media accounts from California and published the challenged statements from Santa Monica. *Id.* ¶¶ 33, 170.

Delaware courts have squarely rejected applying the DTPA to conduct occurring outside the State. In *Stoltz Management of Delaware, Inc. v. Entrata, Inc.*, 2026 WL 252662, at *13 (Del. Super. Ct. Jan. 30, 2026), the Delaware Superior Court dismissed a claim under the DTPA because "[t]he conduct alleged in the Amended Complaint occurred outside Delaware. Thus, because the [DTPA] 'lacks any jurisdiction that the legislature intended for it to apply outside the territorial jurisdiction of Delaware,' [plaintiff] fails to state a claim under the [DTPA]." *Id*; *see also Focus Financial Partners, LLC v. Holsopple,* 250 A.3d 939, 970 (Del. Ch. 2020) ("Delaware law presumes that 'a law is not intended to apply outside the territorial jurisdiction of the State in which it is enacted.'"); *JPMorgan Chase Bank, Nat'l Assoc. v. Argus Info, & Advisory Servs. Inc.*, 765 F.Supp.3d 367, 380-381 (D. Del. Feb. 5, 2025) (dismissing claim under the Delaware Uniform Trade Secrets Act because plaintiff did not allege that the data was misappropriated in Delaware).

Because the Complaint affirmatively locates the operative conduct outside Delaware, Count V should be dismissed under Rule 12(b)(6).

---

[3] Count V also vaguely references "Delaware Common Law" to independently state an unfair-competition claim. Under Delaware common law, unfair competition requires a reasonable expectancy of a valid business relationship that the defendant wrongfully interfered with and defeated. *See Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1057-58 (Del. Super. Ct. 2001). For the reasons discussed above, LMNT has not adequately pleaded such an expectancy.

**5. LMNT Cannot Recover the Restitution It Seeks Under Count VI**

The California UCL authorizes injunctive relief and restitution; it does not authorize compensatory damages or nonrestitutionary disgorgement. Cal. Bus. & Prof. Code § 17200 *et seq.*; *Korea Supply Co.*, 29 Cal. 4th at 1151-52 ("The nonrestitutionary disgorgement remedy sought by plaintiff closely resembles a claim for damages, something that is not permitted under the UCL"). "An order for restitution…compel[s] a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property[.]" *Korea Supply Co.*, 29 Cal. 4th at 1149; *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 453 (2005) ("[I]n the context of the UCL, 'restitution' is limited to the return of property or funds in which the plaintiff has an ownership interest[.]").

LMNT alleges that Oasis earned money from subscriptions purchased by Oasis users and affiliate commissions paid through third-party referral arrangements. Compl. ¶¶ 3, 36-41, 172. Those revenues were paid by third parties, not LMNT, and the Complaint does not allege that LMNT ever possessed or had an ownership interest in them. They therefore cannot be recovered as UCL restitution merely because Oasis allegedly earned them while publishing content about LMNT. *See Korea Supply*, 29 Cal. 4th at 1148-52.

LMNT therefore cannot obtain Oasis's subscription and affiliate revenues as restitution under the UCL. Because those amounts were paid by third parties and were never LMNT's property, they constitute nonrestitutionary disgorgement, which § 17203 does not permit. The Court should dismiss LMNT's request for restitution under Count VI.

**E. A § 1406(a) Transfer Subjects the December 2024 Publication to California's One-Year Defamation Limitations Period**

If this case is transferred under § 1406(a), the transferee court applies its own choice-of-law rules rather than those of the transferor forum. *Lafferty v. St. Riel*, 495 F.3d 72, 77 (3d Cir.

2007) ("When cases have been transferred for improper venue, transferee courts generally apply the substantive law they would have applied had the action been brought there initially."); *Oldham v. Pa. State Univ.*, 138 F.4th 731, 748-49 (3d Cir. 2025). Thus, if the Court grants Defendants' primary request and transfers this action to the Central District of California under § 1406(a), the action proceeds under California's choice-of-law framework, including California's limitations rules applicable to defamation.

California imposes a one-year limitations period on claims for libel and slander. Cal. Code Civ. Proc. § 340(c). A defamation claim ordinarily accrues upon publication, and California's single-publication rule provides that a single integrated publication gives rise to one cause of action and one limitations period. *Shively v. Bozanich*, 31 Cal. 4th 1230, 1245 (2003) ("Under the single-publication rule…publication generally is said to occur on the 'first general distribution of the publication to the public.'"); Cal. Civ. Code § 3425.3 ("No person shall have more than one cause of action for damages…[]for any one presentation to an audience[.]"). Continued availability of the same material does not restart the limitations period; a new period arises only from a qualifying republication. *See Traditional Cat Ass'n, Inc. v. Gilbreath*, 118 Cal. App. 4th 392, 402-04 (2004) ("[T]he need to protect Web publishers from almost perpetual liability for statement they make available to the hundreds of millions of people who have access to the Internet…require[s] application of the single-publication rule to Web page publication.").

The December 2024 publication is therefore untimely on the face of the Complaint. LMNT alleges that Oasis first published the challenged statements regarding lead in LMNT's product on December 16, 2024. Compl. ¶¶ 47-53. LMNT did not file this action until June 10, 2026—more than a year later. That the publication "remained accessible on the Oasis App and across Oasis's social media platforms" for "a period of approximately 17 months" (*see* Compl. ¶¶ 57, 87), does

not alter the analysis; it confirms that any claim arising out of the December 2024 publication falls outside the statute of limitations. LMNT likewise does not allege that the December 2024 publication was altered or otherwise republished within the year preceding suit. *See Gilbreath*, 118 Cal. App. 4th at 402-05 (holding defamation claim untimely where allegedly defamatory statements remained available on an Internet site but the site had not been altered or republished during the limitations period).

Accordingly, following a transfer under § 1406(a), Count II is time-barred to the extent it rests on the December 16, 2024 publication.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court transfer this action to the Central District of California under 28 U.S.C. § 1406(a), or alternatively under 28 U.S.C. § 1404(a). If the Court retains the action, it should dismiss the claims against Hayden under Rule 12(b)(2), dismiss Counts I, III, IV, and V under Rule 12(b)(6), and dismiss Count VI to the extent it seeks restitution of Oasis's subscription and affiliate revenues. Following a transfer under § 1406(a), Count II is also subject to dismissal in the transferee court to the extent it rests on the December 16, 2024 publication.

CONNOLLY GALLAGHER LLP

*<u>/s/ Alan R. Silverstein</u>*
Alan R. Silverstein (#5066)
1201 North Market Street, 20th Floor
Wilmington, DE 19801
(302) 757-7300
asilverstein@connollygallagher.com

*Attorneys for Defendants*
*Live Oasis, LLC and Cormac Hayden*

OF COUNSEL:

Jeremiah T. Reynolds
Eric C. Pettis
EISNER LLP
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
(310) 855-3200
jreynolds@eisnerlaw.com
epettis@eisnerlaw.com

Dated: October 5, 2026