**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DRINK LMNT, INC.<br><br>Plaintiff,<br><br>v.<br><br>LIVE OASIS, LLC, and<br>CORMAC HAYDEN,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 26-CV-677-JLH |

**PLAINTIFF DRINK LMNT, INC.'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER AND MOTION TO DISMISS**

Of Counsel:

Alex Spiro
Renita Sharma
Michael Bloom
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
295 Fifth Avenue
New York, New York 10016
(212) 849-7000

Cory Wroblewski
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
3100 McKinnon St., #1125
Dallas, Texas 75201
(469) 902-3600

DATED: November 2, 2026

Michael A. Barlow (#3928)
Christine J. Chen (#7499)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
500 Delaware Ave., Suite 1400
Wilmington, Delaware 19801
(302) 302-4000
michaelbarlow@quinnemanuel.com
christinechen@quinnemanuel.com

*Attorneys for Plaintiff Drink LMNT, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....1

NATURE AND STAGE OF THE PROCEEDINGS ....1

SUMMARY OF ARGUMENT ....1

STATEMENT OF FACTS ....2

ARGUMENT ....2

I. SECTION 1406(a) IS INAPPLICABLE BECAUSE VENUE IS PROPER ....2

- A. Venue Is Proper In Delaware Because A Substantial Part Of The Events Giving Rise To LMNT's Claims Occurred Here ....3
- B. Defendants' California Ties Do Not Make Venue Improper ....5

II. TRANSFER IS NOT WARRANTED UNDER SECTION 1404(a) ....7

- A. The Private Interest Factors Weigh In Favor Of Delaware ....8
- B. The Public Interest Factors Weigh In Favor Of Delaware ....9

III. LMNT IS ENTITLED TO JURISDICTIONAL DISCOVERY ....10

IV. LMNT PLAUSIBLY STATES THE CLAIMS THAT DEFENDANTS CHALLENGE UNDER RULE 12(b)(6) ....11

- A. Count I States A Claim Under Section 43(a)(1)(B) Of The Lanham Act ....12
- B. Count III States A Claim For Trade Libel Under Delaware Law ....15
- C. Count IV States A Claim For Tortious Interference ....17
- D. Count V States A Claim Under the Delaware Deceptive Trade Practices Act ....18
- E. Count VI States A Claim Under California Business & Professions Code Section 17200 ....20

V. LMNT SHOULD BE GRANTED LEAVE TO AMEND BEFORE ANY SECTION 1406(a) TRANSFER OR DISMISSAL ....20

CONCLUSION ....20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. High-Income Tr. v. AlliedSignal Inc.*,
2002 WL 373473 (D. Del. Mar. 7, 2002) ....................5

*In re Amendt*,
169 F. App'x 93 (3d Cir. 2006) ....................9

*ATB Marine, Inc. v. AES P.R., L.P.*,
2025 WL 1191104 (D. Del. Apr. 24, 2025) ....................3

*Athletes Foot of Del., Inc. v. Ralph Libonati Co.*,
445 F. Supp. 35 (D. Del. 1977) ....................4

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983) ....................13

*Boston Scientific Corp. v. Cook Group Inc.*
269 F. Supp. 3d 229 (D. Del. 2017) ....................5

*Chase Bank USA N.A. v. Hess Kennedy Chartered LLC*,
589 F. Supp. 2d 490 (D. Del. 2008) ....................4

*Cottman Transmission Sys. v. Martino*,
36 F.3d 291 (3d Cir. 1994) ....................3, 6

*Cousins v. Goodier*,
283 A.3d 1140 (Del. 2022) ....................4, 19

*Crowell v. FCA US LLC*,
2024 WL 4333088 (D. Del. Sep. 27, 2024) ....................7

*DaimlerChrysler Corp. v. Askinazi*,
2000 WL 822449 (E.D. Pa. June 26, 2000) ....................4

*Ditri v. Coldwell Banker Residential Affiliates, Inc.*,
954 F.2d 869 (3d Cir. 1992) ....................12

*EIS, Inc. v. WOW Tech Int'l GmbH*,
2020 WL 7027528 (D. Del. Nov. 30, 2020) ....................12, 13, 14

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,
623 F.3d 147 (3d Cir. 2010) ....................10

*Facenda v. N.F.L. Films, Inc.*,
542 F.3d 1007 (3d Cir. 2008)....................12, 13

*Focus Fin. Partners, LLC v. Holsopple*,
250 A.3d 939 (Del. Ch. 2020)....................18, 19

*GOLO, LLC v. HighYa, LLC*,
310 F. Supp. 3d 499 (E.D. Pa. 2018)....................14

*Hartig Drug Co. v. Senju Pharm. Co.*,
836 F.3d 261 (3d Cir. 2016)....................11

*Homsey v. Vigilant Ins. Co.*,
496 F. Supp. 2d 433 (D. Del. 2007)....................12

*IDT Corp. v. Unlimited Recharge, Inc.*,
2012 WL 4050298 (D.N.J. Sep. 13, 2012)....................16

*Incyte Corp. v. Flexus Biosciences, Inc.*,
2017 WL 7803923 (Del. Super. Ct. Nov. 1, 2017)....................4, 15, 16

*Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*,
12 F. Supp. 2d 1035 (C.D. Cal. 1998)....................15, 16, 17

*Joint Stock Soc. Trade House of Descendants of Peter Smirnoff, Off. Purveyor to the Imperial Ct. v. Heublein, Inc.*,
936 F. Supp. 177 (D. Del. 1996)....................5

*JPMorgan Chase Bank, N.A. v. Argus Info. & Advisory Servs. Inc.*,
765 F. Supp. 3d 367 (D. Del. 2025)....................19

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995)....................7, 8, 9

*Keeton v. Hustler Mag., Inc.*,
465 U.S. 770 (1984)....................4, 19

*Klauder & Nunno Enters., Inc. v. Hereford Assocs., Inc.*,
723 F. Supp. 336, 342 (E.D. Pa. 1989)....................5

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003)....................17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)....................15

*Magnacross LLC v. GE MDS LLC*,
2020 WL 6581530 (D. Del. Nov. 10, 2020)....................7

*Maldonado v. Ramirez*,
757 F.2d 48 (3d Cir. 1985)....................11

*Metcalfe v. Renaissance Marine, Inc.*,
566 F.3d 324 (3d Cir. 2009)....................10

*Micron Tech., Inc. v. Rambus Inc.*,
2007 WL 7945582 (D. Del. June 14, 2007)....................9

*Mitel Networks Corp. v. Facebook, Inc.*,
943 F. Supp. 2d 463 (D. Del. 2013)....................8

*Moberg v. 33T LLC*,
666 F. Supp. 2d 415 (D. Del. 2009)....................10, 11

*Montway LLC v. Navi Transp. Servs. LLC*,
809 F. Supp. 3d 200 (D. Del. 2025)....................12

*Montway LLC v. Navi Transp. Servs. LLC*,
826 F. Supp. 3d 532 (D. Del. 2026)....................15

*Novartis Pharms. Corp. v. Handa Neuroscience, LLC*,
2022 WL 610771 (D. Del. Mar. 1, 2022)....................7

*OneSource Virtual, Inc. v. Foster Poultry Farms, LLC*,
2024 WL 4544334 (Del. Super. Ct. Oct. 21, 2024)....................8

*Organovo Holdings, Inc. v. Dimitrov*,
162 A.3d 102 (Del. Ch. 2017)....................16, 17

*Pactiv Corp. v. Perk-Up, Inc.*,
2009 WL 2568105 (D.N.J. Aug. 18, 2009)....................16

*Pennwalt Corp. v. Purex Indus., Inc.*,
659 F. Supp. 287 (D. Del. 1986)....................9

*Purdue Pharma L.P. v. Collegium Pharm., Inc.*,
2015 WL 4653164 (D. Del. Aug. 6, 2015)....................7

*Rosebud LMS, Inc. v. Salesforce.com, Inc.*,
2018 WL 6061343 (D. Del. Nov. 20, 2018)....................9

*Rudolph v. HR Specialist, Inc.*,
37 F. Supp. 3d 740 (D. Del. 2014)....................5

*Ryanair DAC v. Booking Holdings Inc.*,
2023 WL 2867476, (D. Del. Apr. 7, 2023)....................15, 16

*Sports Eye, Inc. v. Daily Racing Form, Inc.*,
565 F. Supp. 634 (D. Del. 1983)....................8

*Stoltz Mgmt. of Del., Inc. v. Entrata, Inc.*,
2026 WL 252662 (Del. Super. Ct. Jan. 30, 2026)....................19

*Tobinick v. Novella*,
848 F.3d 935 (11th Cir. 2017)....................14

*Toys "R" Us, Inc. v. Step Two, S.A.*,
318 F.3d 446 (3d Cir. 2003)....................10, 11

*Traynor v. Liu*,
495 F. Supp. 2d 444 (D. Del. 2007)....................3, 5, 6

*TSMC Tech., Inc. v. Zond, LLC*,
2014 WL 7251188 (D. Del. Dec. 19, 2014)....................8

*U.S. Bank Nat'l Ass'n v. Gunn*,
23 F. Supp. 3d 426 (D. Del. 2014)....................18

*Weiser L. Firm, P.C. v. Hartleib*,
2024 WL 5219737 (3d Cir. Dec. 26, 2024)....................6

*Zuber v. Boscov's*,
871 F.3d 255 (3d Cir. 2017)....................12

**Statutes**

6 *Del. C.* § 18-109....................11

6 *Del. C.* § 2532(a)(8)....................19

28 U.S.C. § 1391(b)(2)....................1, 3

28 U.S.C. § 1400(b)....................5

28 U.S.C. § 1404(a)....................1, 2, 5, 7, 10

28 U.S.C. § 1406(a)....................2, 3, 10, 20

California Business & Professions Code Section 17200....................20

Delaware Deceptive Trade Practices Act....................18

Delaware Uniform Trade Secrets Act....................19

Lanham Act....................1, 12, 13, 14, 15

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................18

Fed. R. Civ. P. 15(a)(2) ....................20

Fed. R. Civ. P. 9(g) ....................15, 16

Fed. R. Civ. P. 12(b)(6) ....................11

D. Del. L.R 9.4(a) ....................16

D. Del. L.R 15.1 ....................20

Restatement (Second) of Torts § 623A ....................15

## INTRODUCTION

Cormac Hayden says he "cracked the code to going viral" through controversy and divisiveness. D.I. 1 ¶ 1. Defendants told millions of consumers that Plaintiff Drink LMNT, Inc.'s ("LMNT") electrolyte drink mix contained "7 times the recommended limit" of lead. *Id.* ¶¶ 47-48, 113. That was false. Defendants reached that figure by treating a bulk concentration as a per-serving dose, a false premise that Defendants corrected in writing in February 2025. *Id.* ¶¶ 13, 58-60. Yet the false claims stayed posted online for about 17 months, and in May 2026, Defendants falsely named LMNT among the "[w]orst rated lab tested supplements" and scored it 3/100. *Id.* ¶¶ 57, 91, 109. As LMNT alleges, the false claims were too profitable to correct. *Id.* ¶ 1. Defendants do not dispute that the statements were false, and they do not ask this Court to dismiss the defamation claim.[1] What they principally want is a different court. Their requests should be denied.

## NATURE AND STAGE OF THE PROCEEDINGS

LMNT filed this action on June 10, 2026, asserting claims under the Lanham Act and Delaware and California law. D.I. 1. On October 5, Defendants moved to transfer the action to California and to dismiss certain claims. D.I. 9, 10. This is LMNT's opposition to that motion.

## SUMMARY OF ARGUMENT

1. Venue is proper under 28 U.S.C. § 1391(b)(2) because the publication and receipt of Defendants' false statements in Delaware are a substantial part of the events giving rise to LMNT's claims. Defendants cannot carry their burden of showing improper venue.

2. The *Jumara* factors do not warrant transfer for convenience under 28 U.S.C. § 1404(a), where a Delaware corporation sued a Delaware company in Delaware and Defendants'

---

[1] Defendants preview a limitations defense to Count II that would apply only after a transfer under § 1406(a) and only to the December 2024 publication. D.I. 10 at 18-20. That argument is premature, and regardless, it does not reach the May 20, 2026 publication. *See infra* Section I n.2.

claimed inconvenience is that of one person (Hayden). But if the Court is inclined to transfer, it should do so under § 1404(a) alone, because 28 U.S.C. § 1406(a) is reserved for improper venue.

3. LMNT is entitled to limited jurisdictional discovery over Hayden.

4. Counts I, III, IV, and V state claims for relief, but LMNT does not oppose dismissal without prejudice of its request for UCL restitution of Oasis's subscription and affiliate revenues, and the remainder of Count VI is unchallenged.

5. Alternatively, LMNT requests leave to amend.

## STATEMENT OF FACTS

LMNT is a Delaware corporation that manufactures and sells electrolyte-drink mixes. D.I. 1 ¶¶ 6, 19, 28. Live Oasis, LLC ("Oasis"), a Delaware LLC, operates a subscription app that rates consumer products and collects subscription and affiliate revenue. *Id.* ¶¶ 28-30. Hayden—Oasis's sole managing member—personally operated Oasis's social-media accounts and was the only employee involved in the relevant events. *Id.* ¶¶ 31-34; D.I. 11 (Hayden Decl.) ¶ 2. Hayden has no scientific credentials or experience, and Oasis has "no scientific staff" and "no operations meaningfully independent of Hayden himself." D.I. 1 ¶ 34.

On December 16, 2024, Oasis published posts falsely claiming that LMNT's product contained "7 times the recommended limit" of lead, and the false claims remained online for about 17 months. D.I. 1 ¶¶ 47-48, 57. On May 20, 2026, Oasis published a second false claim that LMNT contained "93% lead." *Id.* ¶ 91. LMNT relies on its Complaint for the remaining background.

## ARGUMENT

### I. SECTION 1406(a) IS INAPPLICABLE BECAUSE VENUE IS PROPER

The Court should not transfer pursuant to 28 U.S.C. § 1406(a) because Defendants have not carried their burden of showing venue is improper. Section 1406(a) applies only to a case "laying venue in the wrong division or district" and permits transfer in that circumstance "in the

interest of justice." 28 U.S.C. § 1406(a). The Court accepts LMNT's well-pleaded venue allegations unless Defendants' evidence contradicts them. *ATB Marine, Inc. v. AES P.R., L.P.*, 2025 WL 1191104, at *1 n.1 (D. Del. Apr. 24, 2025). Venue here is established by 28 U.S.C. § 1391(b)(2), which permits suit in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Defendants do not contest that the false statements were published to, and read by, consumers in Delaware.[2]

### A. Venue Is Proper In Delaware Because A Substantial Part Of The Events Giving Rise To LMNT's Claims Occurred Here

Venue is proper pursuant to § 1391(b)(2) because it requires only that "a substantial part of the events," not "a majority of the events," occurred in the district. *Traynor v. Liu*, 495 F. Supp. 2d 444, 450 (D. Del. 2007) (citation modified). Events that "bear a close nexus to the claims . . . are properly deemed significant," *id.* at 451, and only those events with a "tangential connection with the dispute in litigation" do not suffice, *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994).

LMNT's claims arise from Defendants' publications of false statements about LMNT's products. In December 2024, Defendants published posts across X, Instagram, YouTube, Threads, Facebook, and the Oasis App claiming that LMNT's product contained "7 times the recommended limit" of lead. D.I. 1 ¶¶ 47-48, 87. In May 2026, Defendants again published false statements naming LMNT among the "[w]orst rated lab tested supplements" and listing it as containing "93%

[2] Defendants invoke § 1406(a) in part to argue that, after a transfer, California's one-year statute of limitations would bar Count II as to the December 2024 publication. D.I. 10 at 18-20. They do not ask this Court to dismiss any part of Count II, and their argument leaves untouched the May 20, 2026 publication, made three weeks before LMNT filed suit. D.I. 1 ¶ 91. Whether any part of Count II is time-barred, and under which state's law, is a question for the court that ultimately hears the case. LMNT does not concede that California law would govern after any transfer or that Count II is untimely in whole or in part, and it reserves all arguments. *See infra* Section II.

lead." *Id.* ¶ 91. Many posts "ultimately generated over 2.5 million views," and third-party creators repeated the false lead claim to "approximately 2.15 million additional views." *Id.* ¶¶ 48 n.1, 50. The content "remained accessible" for "approximately 17 months." *Id.* ¶ 57. The posts were published across the country and "accessible and accessed within this District." *Id.* ¶¶ 27, 127.

Those facts matter because of the nature of this dispute. Defendants' argument that Oasis's nationwide reach does not make Delaware a proper forum skips the first step of the inquiry. D.I. 10 at 7. Defamation requires publication, meaning communication "by any method, to one or more persons who can understand the meaning." *Cousins v. Goodier*, 283 A.3d 1140, 1148 (Del. 2022) (citation modified). LMNT's trade libel and false advertising claims likewise depend on the statements reaching their audience. *See Incyte Corp. v. Flexus Biosciences, Inc.*, 2017 WL 7803923, at *7 (Del. Super. Ct. Nov. 1, 2017). The statements here were clearly available in Delaware. They were published and circulated to a Delaware audience and read here. D.I. 1 ¶ 27. Libel is a tort "generally held to occur wherever the offending material is circulated." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 777 (1984). The circulation and receipt of the defamatory statements in this District are a substantial part of the events giving rise to LMNT's claims. *See id.*; *Chase Bank USA N.A. v. Hess Kennedy Chartered LLC*, 589 F. Supp. 2d 490, 495, 501 (D. Del. 2008) (venue proper where out-of-state defendants directed letters to Delaware).

LMNT's injury confirms the connection. LMNT, a Delaware corporation, was injured by false statements published by a Delaware entity and its sole managing member. *See Athletes Foot of Del., Inc. v. Ralph Libonati Co.*, 445 F. Supp. 35, 45 n.30 (D. Del. 1977) (venue may be proper in tort cases where the injury occurred in Delaware).[3] LMNT sold products through its website to

---

[3] *See also DaimlerChrysler Corp. v. Askinazi*, 2000 WL 822449, at *7 (E.D. Pa. June 26, 2000) (although the defamatory statements "were actually made in Michigan," venue is proper in

more than 3,100 unique Delaware customers between December 1, 2024 and October 27, 2026, Rogers Decl. ¶ 2, and Defendants published their statements to a nationwide audience, including in Delaware, that caused consumers "to avoid purchasing LMNT's products, to return products already purchased, and to warn others against purchasing them." D.I. 1 ¶¶ 27, 113. Those facts, together with the publication of the statements here, show a substantial part of the events giving rise to LMNT's claims occurred in Delaware. *See Joint Stock Soc. Trade House of Descendants of Peter Smirnoff, Off. Purveyor to the Imperial Ct. v. Heublein, Inc.*, 936 F. Supp. 177, 188 (D. Del. 1996) (considering "sales . . . in Delaware").[4]

**B. Defendants' California Ties Do Not Make Venue Improper**

Defendants erroneously argue that their ties to California render Delaware an improper venue. They rely on Oasis's California headquarters, Hayden's California domicile, and Hayden's declaration that none of the work behind the challenged posts occurred in Delaware. D.I. 10 at 6-7. Those facts do not establish that venue in Delaware is *improper*. Those facts, at most, go to convenience under § 1404(a), which Defendants cannot establish. *See infra* Section II.

At the threshold, Defendants' California ties do not have a close nexus to the claims. Defendants assert that Oasis's headquarters and Hayden's residence show where Hayden published. D.I. 10 at 6; D.I. 11 ¶¶ 2-3. But Defendants identify no challenged post that mentions California, so none of those averments "bear[] a close nexus to [LMNT's] claims." *Traynor*, 495

---

Pennsylvania where the statements were published and injuries were felt); *Klauder & Nunno Enters., Inc. v. Hereford Assocs., Inc.*, 723 F. Supp. 336, 342 (E.D. Pa. 1989) (declining to transfer to New Jersey, where defendants resided, in part because the allegedly defamatory letters were sent to Pennsylvania, among other states such as Florida and New Jersey).

[4] Defendants' authorities are distinguishable. *Rudolph v. HR Specialist, Inc.*, 37 F. Supp. 3d 740, 743-44 (D. Del. 2014) ("no allegations that any of the events at issue took place in Delaware"); *Am. High-Income Tr. v. AlliedSignal Inc.*, 2002 WL 373473, at *1 (D. Del. Mar. 7, 2002) (no Delaware plaintiff); *Boston Scientific Corp. v. Cook Group Inc.* 269 F. Supp. 3d 229, 248 (D. Del. 2017) (patent venue statute, 28 U.S.C. § 1400(b), has no "substantial part of the events" test).

F. Supp. 2d at 451. Nor would California events defeat venue here. The Court is not required "to determine the 'best' forum or the forum with the most substantial events," especially where "more than one federal district may be a proper venue[.]" *Weiser L. Firm, P.C. v. Hartleib*, 2024 WL 5219737, at *6 (3d Cir. Dec. 26, 2024) (citation modified); *see also Cottman*, 36 F.3d at 294.

Similarly, because the statements were published to and read in Delaware, Defendants' other purported actions are not relevant. Hayden's declaration says that no "testing, review, product scoring, drafting, editing, [or] publication . . . decisions . . . occurred in Delaware." D.I. 10 at 6-7 (citing D.I. 11 ¶ 4). But legally, the focus is not on where the statements were made but on where they were published and read, which are the events that give rise to LMNT's claims. *See supra* Section I.A. Defendants do not dispute that the statements were received and accessed in this District, where the torts were completed. D.I. 1 ¶ 27. And factually, LMNT alleges that Oasis had "no scientific staff, no Head of Lab Testing, and no operations meaningfully independent of Hayden himself," D.I. 1 ¶ 34, was "actively recruiting for a Head of Lab Testing" when this action was filed, *id.* ¶ 123, and that Hayden admitted that Oasis "grew faster than we could scale our QC process." *Id.* ¶ 94. If LMNT is correct that no testing, review, or scoring took place at all, then it does not matter that none took place in Delaware, and Hayden's declaration never says that Oasis tested LMNT's products. It refers only to unnamed "individuals with material knowledge" of Oasis's "review of laboratory information" in California. D.I. 11 ¶ 7.[5] Even as to the drafting, editing, and publishing of the statements, the declaration does not say whether they occurred in California or elsewhere. Indeed, Hayden's own public posts show him working abroad in the days

[5] The declaration speaks in the present tense and does not say when these individuals joined Oasis. Anyone who joined after the challenged publications could not have worked on them, and the events giving rise to LMNT's claims are the December 2024 and May 2026 publications. D.I. 1 ¶¶ 47-48, 91. Oasis announced a purported "Science Board" to review its scoring methodology on August 6, 2026, after this action was filed. Carter Decl. ¶ 8, Ex. C.

and weeks around both publications. Carter Decl. ¶¶ 3-7, Exs. A-B.

Finally, in the alternative, the Court should order limited venue discovery rather than transfer at this juncture. "[T]he Court should permit venue-related discovery, to allow the adversarial process to aid the Court in making a fact-specific decision on a well-developed factual record," and the standard is the same lenient one that governs jurisdictional discovery: "unless a plaintiff's claim is 'clearly frivolous,' jurisdictional discovery should be allowed." *Novartis Pharms. Corp. v. Handa Neuroscience, LLC*, 2022 WL 610771, at *8-9 (D. Del. Mar. 1, 2022) (citation modified); *see Crowell v. FCA US LLC*, 2024 WL 4333088, at *6 (D. Del. Sep. 27, 2024) (relevant information "in the defendant's hands") (citation modified). LMNT's basis for venue has substantial merit, so it is not clearly frivolous. *See supra* Section I.A. Accordingly, if the Court has a factual question about whether venue is improper, it should first permit limited venue discovery on Oasis's Delaware subscribers, downloads, and affiliate revenue; where the posts were composed; and where Oasis operated and who worked for it at the relevant times.

## II. TRANSFER IS NOT WARRANTED UNDER SECTION 1404(a)

Section 1404(a) does not support transfer under *Jumara*. Defendants bear the burden of showing that transfer is warranted, and "the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citation omitted). A plaintiff "generally has been accorded the privilege of bringing an action where [it] chooses." *Magnacross LLC v. GE MDS LLC*, 2020 WL 6581530, at *2 (D. Del. Nov. 10, 2020) (citation modified). That privilege carries particular weight here: Delaware is "a predictable, legitimate venue for bringing suit" between a Delaware corporation and a Delaware company. *See Purdue Pharma L.P. v. Collegium Pharm., Inc.*, 2015 WL 4653164, at *4 (D. Del. Aug. 6, 2015) (citation omitted). The *Jumara* factors do not overcome that choice.

**A. The Private Interest Factors Weigh In Favor Of Delaware**

Delaware is the state of organization of both LMNT and Oasis. D.I. 1 ¶¶ 19, 20. "[I]t is rational and legitimate for a plaintiff to choose to sue a defendant in that defendant's state of incorporation." *TSMC Tech., Inc. v. Zond, LLC*, 2014 WL 7251188, at *15 (D. Del. Dec. 19, 2014). Because LMNT sued in its own state of incorporation, its choice carries the "presumption that it has chosen a convenient forum, and that choice should be respected." *OneSource Virtual, Inc. v. Foster Poultry Farms, LLC*, 2024 WL 4544334, at *8 (Del. Super. Ct. Oct. 21, 2024) (citation omitted). Defendants say that LMNT's choice deserves less weight because LMNT's principal place of business is in Florida, D.I. 10 at 8, but the case they rely on in support of this claim involved a plaintiff with no connection to Delaware.[6] Neither side's lack of Delaware offices tips the balance, *see Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 476 (D. Del. 2013), because Delaware is where both entities are organized, and Defendants' preference for California carries less weight than LMNT's forum choice. *See Jumara*, 55 F.3d at 879.

Defendants' own convenience arguments also reduce to a single person. They assert that "both Defendants are located in California" and that Hayden "would have to defend across the country." D.I. 10 at 8. But Oasis has "no operations meaningfully independent of Hayden himself," D.I. 1 ¶¶ 33-34, and Hayden confirmed that he personally operated the Oasis accounts and is responsible for their content. D.I. 11 ¶ 2. Defendants' assertions depend on the purported *inconvenience to one person*, who chose to organize Oasis in Delaware and, by his own public posts, set up a "new office" abroad days before the first publication and worked remotely overseas

[6] Defendants rely on *Sports Eye* for the proposition that a plaintiff's forum choice is "of diminished importance" outside its "home turf." D.I. 10 at 8. But the plaintiff there was incorporated and had its principal place of business in New York, whereas LMNT sued in its own state of incorporation. *See Sports Eye, Inc. v. Daily Racing Form, Inc.*, 565 F. Supp. 634, 635 (D. Del. 1983).

again at the time of the second publication. Carter Decl. ¶¶ 4-7, Exs. A-B.

Defendants' witness and records arguments fare no better. Hayden names no witnesses, D.I. 11 ¶ 7, and party witnesses carry no weight. *Rosebud LMS, Inc. v. Salesforce.com, Inc.*, 2018 WL 6061343, at *5 (D. Del. Nov. 20, 2018). He identifies no third-party witness unavailable for trial in Delaware, *Jumara*, 55 F.3d at 879, or the "specific[]" witnesses that a movant must identify. *Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287, 291 n.5 (D. Del. 1986). And Defendants' records are "maintained electronically," D.I. 10 at 5, 8, so they identify no evidence "that could not be produced in Delaware." *Rosebud*, 2018 WL 6061343, at *6.

### B. The Public Interest Factors Weigh In Favor Of Delaware

The public interest factors do not favor transfer. Defendants invoke California's interest in claims against California-based actors, but the alleged wrongful acts are publications to a nationwide audience, including in Delaware, D.I. 1 ¶¶ 27, 127, and none of the challenged statements concerns California. *See supra* Section I.B. Defendants' authorities involved wrongful acts that occurred in the other forum. Here, both entity parties are organized in Delaware, and Hayden chose to organize Oasis here. D.I. 1 ¶ 20; *see Micron Tech., Inc. v. Rambus Inc.*, 2007 WL 7945582, at *2–3 (D. Del. June 14, 2007) (deferring to plaintiff's "decision to litigate in Delaware, where both parties are incorporated" even though both are headquartered elsewhere).

Defendants also argue that California is the only forum where both Defendants can be sued in one proceeding, D.I. 10 at 9, but no parallel proceeding exists, and in any event their argument assumes that Hayden will be dismissed, which LMNT contests in Section III. *See In re Amendt*, 169 F. App'x 93, 96 (3d Cir. 2006) (duplicative proceedings in separate fora).

For all these reasons, the Court should deny Defendants' request for transfer under §1404(a). If the Court nonetheless concludes that transfer is warranted, it should transfer under § 1404(a), not § 1406(a), because Defendants have not shown that venue is improper.

## III. LMNT IS ENTITLED TO JURISDICTIONAL DISCOVERY

To establish personal jurisdiction over Hayden, LMNT must make a prima facie showing, and factual disputes must be resolved in its favor. *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010). If personal jurisdiction "is not clearly frivolous," the Court should allow jurisdictional discovery. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009) (citation omitted).

Hayden acknowledges that he "personally operated Oasis's social-media accounts and participated in the preparation and publication" of the admittedly false statements at issue. D.I. 11 ¶ 2; D.I. 1 ¶¶ 14, 92, 99, 113. LMNT alleges that Oasis is a subscription app with more than 700,000 members, nearly one million downloads, and over $442,000 in monthly revenue, that it earns affiliate commissions, and that its false content was a customer-acquisition tool aimed at consumers across the United States. D.I. 1 ¶¶ 16, 30. Although a commercially interactive site is not enough by itself, jurisdiction exists where the operator "intentionally targets the site to the forum state, and/or knowingly conducts business with forum state residents via the site." *Moberg v. 33T LLC*, 666 F. Supp. 2d 415, 427 (D. Del. 2009) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452, 454 (3d Cir. 2003)). And "any information regarding [the defendant's] intent vis-a-vis its Internet business and regarding other related contacts is known by [the defendant], and can be learned by [the plaintiff] only through discovery." *Id.* at 428 (quoting *Toys "R" Us*, 318 F.3d at 455).

*Moberg* applied that rule to an individual who operated an English-language website selling in U.S. currency. The plaintiff showed that the site was available in Delaware but not that the operator had "specifically targeted and conducted business with Delaware citizens." *Id.* at 427. Because it was "evident" that he was "targeting United States customers," but that "only [he] holds that information" about Delaware, the court denied the motion and ordered "jurisdictional

discovery limited to determining [the] website's contacts with Delaware." *Id.* at 428 & n.18.

The same is true here. Oasis sells subscriptions to consumers across the United States. D.I. 1 ¶¶ 3, 127. Hayden's declaration denies a Delaware "operational presence," D.I. 11 ¶¶ 3, 5, but, like the affidavit in *Moberg*, does not deny that Oasis has Delaware users, subscribers, or revenue, and it concedes that the app and accounts "were available to users generally." D.I. 11 ¶ 5. Statements that Defendants did not "direct" any statement to "Delaware residents" or operate the app "for the purpose of targeting Delaware," *id.*, are legal conclusions, not facts, that the Court should disregard. *See Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985).

LMNT therefore requests that the Court deny the motion as to Hayden and permit limited jurisdictional discovery on Delaware users, downloads, subscriptions, and revenue; affiliate commissions on Delaware purchases; any geographic targeting; and Hayden's role in directing those activities, with leave to renew. *See Moberg*, 666 F. Supp. 2d at 428 & n.18; *Toys "R" Us*, 318 F.3d at 456 (error to deny discovery where unexplored contacts "might provide the 'something more' needed to bring [the defendant] within our jurisdiction").[7]

## IV. LMNT PLAUSIBLY STATES THE CLAIMS THAT DEFENDANTS CHALLENGE UNDER RULE 12(b)(6)

On review of a motion to dismiss for failure to state a claim, "the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (citation modified). Dismissal is proper only when a complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (citation omitted).

[7] LMNT preserves its argument that 6 *Del. C.* § 18-109 reaches Hayden, who personally participated in the challenged conduct.

"The burden of demonstrating that dismissal is appropriate rests on the movant." *Homsey v. Vigilant Ins. Co.*, 496 F. Supp. 2d 433, 436 (D. Del. 2007). Defendants have not carried that burden as to any of the challenged counts. LMNT addresses each in turn.

### A. Count I States A Claim Under Section 43(a)(1)(B) Of The Lanham Act

A Lanham Act false advertising claim requires a plaintiff with standing who pleads:

> (1) that the defendant has made false or misleading statements as to his own product [or another's]; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods travelled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Montway LLC v. Navi Transp. Servs. LLC*, 809 F. Supp. 3d 200, 215 (D. Del. 2025) (Bibas, J.) (quoting *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 872 (3d Cir. 1992)) (alteration in *Ditri*). Defendants do not challenge any of these, instead arguing that Defendants' statements were not made in "commercial advertising or promotion." D.I. 10 at 11-13. They were.

The Third Circuit considers whether speech is commercial by asking whether (1) it is an advertisement, (2) it refers to a specific product, and (3) the speaker has an economic motivation. *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1017 (3d Cir. 2008). LMNT alleges all three.

First, Defendants' false statements and in-app scores are advertising in substance. LMNT alleges that Oasis's posts, scores, and content were designed to drive downloads of the app and affiliate revenue "by steering consumers away from LMNT's products and toward competing products from which Oasis profits," and that they were disseminated widely to the relevant purchasing public. D.I. 1 ¶ 119. Oasis also places Amazon referral links for competing products on LMNT's own product pages beside the score. *Id.* ¶ 38. Taken together, this is commercial speech. *See EIS, Inc. v. WOW Tech Int'l GmbH*, 2020 WL 7027528, at *4 (D. Del. Nov. 30, 2020) (reviews posted on plaintiff's product pages sufficiently alleged commercial speech despite not

naming defendants or proposing a sale because they were meant to deter purchases of plaintiff's product, and a reader could select a site selling competing products on the page).

Second, Defendants' false statements concern a specific product—LMNT's electrolyte drinks—D.I. 1 ¶¶ 47-48, 119, and Defendants do not argue otherwise.

Third, Defendants plainly have an economic motivation. Oasis earns commissions when readers buy through its links, including links on LMNT's own product pages, and Defendants earn revenue with each app download. D.I. 1 ¶¶ 2-5, 28-30, 36-46, 56, 89. That is a financial interest in sales, which satisfied this factor in *Facenda*. 542 F.3d at 1017 (licensing agreement gave the NFL "a direct financial interest in sales of the video game").

Defendants say that Oasis earns its commission "regardless of which product a consumer buys," so it has no incentive "to favor any brand." D.I. 10 at 2. That misses the point. The third prong asks whether the speaker has an economic motivation for the speech, not whether it has an incentive to favor one seller over another. Here, the speech itself is the motive: Oasis profits "from every click its alarming content about LMNT generates," so "the more divisive and controversial the claim, the more clicks it drives, and the more revenue Oasis earns." D.I. 1 ¶ 38. Hayden said as much. He declared that he "cracked the code to going viral" through controversy, boasted that downloads "skyrocketed since posting here," and celebrated a "record day" the very day Oasis published the second false statement. *Id.* ¶¶ 1, 39, 46, 107, 119. Every alarming score Defendants post about a well-known brand is essentially "a customer acquisition tool." *Id.* ¶ 43.

Nor does the speech escape the Lanham Act because it purports to concern product safety. *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-68 (1983) (pamphlets on public health topics were commercial speech where they referred to a specific product and the speaker was economically motivated). Defendants cite Oasis's statement that it never engages in "any type of

paid promotion," D.I. 10 at 13, but Oasis earns commissions when readers buy through its links, which is essentially a paid promotion. D.I. 1 ¶¶ 40-42; *see also EIS*, 2020 WL 7027528, at *4 (allegations of paid posts sufficiently alleged "financially motivated advertisements," not mere criticism or opinion, and allegations that reviews deterred purchases and led readers to competing products sufficiently alleged commercial speech).

Defendants' authorities do not help them. In *Tobinick v. Novella*, a physician sued over two blog posts criticizing his off-label treatment, and the court affirmed *summary judgment*, rejecting a "funneling" theory as too attenuated where the posts were not "the central content driving advertising or membership-based revenue." 848 F.3d 935, 940-41, 950-52 (11th Cir. 2017). Here the links sit on the same pages as the false scores behind a paywall, LMNT alleges that the alarming content drives Oasis's revenue, and Oasis (unlike Novella) is paid when readers buy through those links, in addition to its subscription revenue. D.I. 1 ¶¶ 3, 38. In *GOLO, LLC v. HighYa, LLC*, the court dismissed conclusory allegations after the defendants corrected their reviews, disclosed their commercial affiliations, and earned revenue regardless of whether a review was favorable. 310 F. Supp. 3d 499, 501, 506-07 (E.D. Pa. 2018). None of that is alleged here. Oasis kept the false claims online for 17 months after Hayden acknowledged the falsity, and LMNT alleges that Oasis's alarm and divisiveness is what drives its revenue. D.I. 1 ¶¶ 3, 38, 43, 57, 87. *GOLO* also recognized "that liability can arise under the Lanham Act if websites purporting to offer reviews are in reality stealth operations intended to disparage a competitor's product while posing as a neutral third party," and cautioned that plausibility should be applied with care without discovery. 310 F. Supp. 3d at 505-06.

Finally, Defendants' unsupported assertion that Oasis does not compete with LMNT is wrong on the facts and the law. D.I. 10 at 1. On the facts, Oasis competes with LMNT by

publishing false statements about LMNT to steer consumers away from LMNT's products and toward competing products from which Oasis profits. D.I. 1 ¶ 119. On the law, the Supreme Court rejected the view that the Lanham Act protects only direct competitors. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 136 (2014); *GOLO*, 310 F. Supp. 3d at 507 ("[t]o be clear, direct commercial competition is not an absolute requirement" (citing *id.*)).

Defendants' false statements about LMNT's products were commercial speech, and LMNT states a claim under the Lanham Act.

**B. Count III States A Claim For Trade Libel Under Delaware Law**

Defendants challenge one element of Count III, special pecuniary loss, and do not dispute the others. D.I. 10 at 13-14. Count III is pleaded under Delaware law, D.I. 1 ¶ 145, and the question is whether it states a claim under that law.

The two Delaware decisions Defendants cite for the pecuniary loss element each found comparable allegations sufficient. *See Ryanair DAC v. Booking Holdings Inc.*, 2023 WL 2867476, at *9 (D. Del. Apr. 7, 2023) (applying Restatement (Second) of Torts § 623A and finding allegations that false statements cause "the loss of revenue from existing customers" and "diminishment of its reputation in the travel industry more broadly" sufficient); *Incyte*, 2017 WL 7803923, at *7 (Del. Super. Ct. Nov. 1, 2017) (allegations that disparagement of plaintiff would "decrease the value" of plaintiff's product sufficient); *see also Montway LLC v. Navi Transp. Servs. LLC*, 826 F. Supp. 3d 532, 543 (D. Del. 2026) (allegations of harm from receiving "significantly fewer orders" sufficient). Defendants cite no Delaware decision to the contrary.

Defendants invoke Rule 9(g) but cite no authority from this Circuit holding that it requires more than LMNT has alleged. Their only authority is a California district court decision noting the "apparent absence of guidance" in its own circuit. *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998). The Delaware decisions Defendants cite for the

pecuniary loss element, by contrast, assessed the claim under ordinary pleading standards and found comparable allegations sufficient. *See Ryanair*, 2023 WL 2867476, at *9; *Incyte* 2017 WL 7803923, at *7. Even assuming Rule 9(g) applies to this element, it requires only that an item of special damage be "specifically stated," not that the plaintiff allege a dollar figure, *Isuzu*, 12 F. Supp. 2d at 1047 ("plaintiff is not required to allege a specific dollar amount"), or name every lost customer. Defendants cite nothing to the contrary.[8]

LMNT's allegations are specific nonetheless. The false lead claims were viewed by millions of consumers, many of whom avoided purchasing LMNT's products, returned products they had bought, and/or warned others against buying them. D.I. 1 ¶¶ 113-14. One customer wrote to LMNT that they would share the false lead claims with a group of 90,000 members, and a health practitioner who had recommended LMNT to clients wrote that she felt "completely betrayed." *Id.* ¶ 54. A prospective sponsorship partner declined to move forward, citing Defendants' false lead claims. *Id.* ¶ 55. These allegations identify who was lost, how, and why, and they tie each loss to the challenged statements. *See also IDT Corp. v. Unlimited Recharge, Inc.*, 2012 WL 4050298, at *7 (D.N.J. Sep. 13, 2012) ("lost customers and prospective customers, as well as valuable goodwill" adequately pleaded special damages under New Jersey's particularity requirement); *Pactiv Corp. v. Perk-Up, Inc.*, 2009 WL 2568105, at *11 (D.N.J. Aug. 18, 2009) (same).

LMNT's sponsorship allegation does not fail because the partner is unnamed, and Defendants again cite no authority to the contrary. *Cf. Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 122 (Del. Ch. 2017) (plaintiff "does not need to identify a party by name").

---

[8] Defendants fault LMNT for pleading damages "in an amount to be proven at trial." D.I. 10 at 14. But D. Del. L.R. 9.4(a) states that a plaintiff "shall not claim any specific sum" in a complaint.

If the Court finds more specificity necessary to sustain Count III, LMNT requests leave to amend. *See Isuzu*, 12 F. Supp. 2d at 1047.

**C. Count IV States A Claim For Tortious Interference**

Defendants challenge only two elements of Count IV: the probability of a business opportunity and their knowledge of it. D.I. 10 at 15-16. They do not dispute that the interference was intentional and improper, that it caused injury, or that LMNT was damaged. The Court need not decide whether Delaware or California law governs because Defendants say the claim fails under either. *Id.* at 15 n.2. Regardless, it is adequately pleaded under both.[9]

First, LMNT alleges a reasonably probable business opportunity. A plaintiff "does not need to identify a party by name" but must do more than offer "vague statements about unknown customers." *Organovo*, 162 A.3d at 122-23. LMNT identified a prospective sponsorship partner that declined to move forward after its team "encountered some concerns regarding claims that LMNT may contain lead," and cited Oasis's false lead claims as its reason. D.I. 1 ¶¶ 55, 156. Customers who read the claims contacted LMNT and indicated that they would stop purchasing LMNT's product, *id.* ¶ 156, and LMNT quotes them. *Id.* ¶ 54. They include a customer who would share the claims with a group of 90,000 members and a disgruntled practitioner who believed Defendants' lies. *Id.* These are not a "nebulous, unascertainable class." D.I. 10 at 16 (quoting *Organovo*, 162 A.3d at 123). They are LMNT's customers and partners, identified by what they said and did—plainly distinguishable from *Organovo*, where the plaintiff "never specified any customer relationships that [the defendant] harmed." 162 A.3d at 123.

Second, LMNT alleges knowledge. Defendants' argument assumes that Count IV rests on

[9] Defendants say California law governs but acknowledge that the Court need not decide. D.I. 10 at 15 n.2. LMNT does not concede the point, and in any event Count IV is adequately pleaded under California law. D.I. 1 ¶ 155 (independently wrongful conduct); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-54 (2003).

the sponsorship alone, so that LMNT must allege that Defendants knew of that deal before they published. D.I. 10 at 15-16. But the sponsorship is only one example of the injury LMNT suffered, D.I. 1 ¶ 156, and Count IV also rests on LMNT's customers and other business relationships. The question is whether Defendants knew of those relationships; LMNT alleges that they did. LMNT alleges that Oasis's platform "specifically targets" consumers researching electrolyte products and "specifically disseminated" the lead claims to them. *Id.* ¶ 153. It also alleges that Oasis embeds referral links on LMNT's own product pages, *id.* ¶ 38, and published the claims to steer consumers toward competing products from which Oasis earns commissions. *Id.* ¶ 154. A defendant that targets a company's customers knows they exist. LMNT further alleges that it told Defendants that the claims were false through four channels beginning December 16, 2024, yet Defendants kept them online for about 17 months and then published a second statement in May 2026 falsely claiming that LMNT was one of the "[w]orst rated lab tested" products because it purportedly contained "93% lead." *Id.* ¶¶ 47-57, 82, 91-93. Knowledge "may be alleged generally," Fed. R. Civ. P. 9(b), and Defendants' authority does not hold otherwise—*U.S. Bank Nat'l Ass'n v. Gunn*, 23 F. Supp. 3d 426, 436 (D. Del. 2014), was decided on summary judgment with a full record.

### D. Count V States A Claim Under the Delaware Deceptive Trade Practices Act

Defendants' principal argument against Count V is that LMNT does "not identify any deceptive act undertaken in Delaware." D.I. 10 at 17. That argument misreads the Complaint, the Delaware Deceptive Trade Practices Act ("DTPA"), and the case law.[10]

Delaware presumes that a statute does not reach conduct in other states. *Focus Fin. Partners, LLC v. Holsopple*, 250 A.3d 939, 970 (Del. Ch. 2020). But the presumption asks where

[10] Defendants raise a one-footnote challenge to LMNT's common-law unfair competition theory, which rests entirely on the expectancy argument they make against the tortious interference claim. D.I. 10 at 17 n.3. Their territorial argument does not reach that theory, and the expectancy argument fails for the reasons given above. *See supra* Section IV.C. This claim survives regardless.

the prohibited conduct occurred, and the DTPA prohibits disparaging "the goods, services, or business of another by false or misleading representation of fact." 6 *Del. C.* § 2532(a)(8). A representation is made when it is communicated, so a statement published to a national audience reaches Delaware when readers there receive it. *See Cousins*, 283 A.3d at 1148; *Keeton*, 465 U.S. at 777. LMNT alleges that Defendants communicated the false lead claims to a nationwide audience of consumers, including in Delaware, where they were "accessible and accessed." D.I. 1 ¶¶ 27, 127. That is conduct reaching Delaware, not extraterritorial application of the statute.

Defendants' authorities do not require a different result. Their one DTPA case, *Stoltz*, dismissed a claim concerning a private software contract performed at apartment complexes in North Carolina, where the court determined the alleged conduct occurred. *Stoltz Mgmt. of Del., Inc. v. Entrata, Inc.*, 2026 WL 252662, at *1-2, *13 (Del. Super. Ct. Jan. 30, 2026). LMNT, by contrast, alleges that Defendants' public statements were communicated to, and accessed by, readers in Delaware, D.I. 1 ¶¶ 27, 127, and Defendants do not dispute that. Their remaining cases concern the Delaware Uniform Trade Secrets Act, which turns on where the defendant used or disclosed trade secrets. *JPMorgan Chase Bank, N.A. v. Argus Info. & Advisory Servs. Inc.*, 765 F. Supp. 3d 367, 380-81 (D. Del. 2025); *see Focus Fin. Partners*, 250 A.3d at 970.

Even *JPMorgan* recognized that, where wrongful acts are "scattered all over the country," Delaware courts have applied the law of the state where the injury was felt, and the court dismissed without prejudice with leave to amend. 765 F. Supp. 3d at 380-81. If the Court finds LMNT's allegations of Delaware conduct insufficient, LMNT requests leave to amend to plead additional facts, including Delaware readers, users, and purchasers.

### E. Count VI States A Claim Under California Business & Professions Code Section 17200

Defendants do not seek dismissal of Count VI. They acknowledge that the "California UCL authorizes injunctive relief and restitution" and challenge only LMNT's request for restitution under the UCL. D.I. 10 at 18, 20. LMNT does not oppose dismissal of its request for restitution as to Oasis's subscription and affiliate revenues as currently pleaded but asks that dismissal be without prejudice to LMNT seeking leave to amend if discovery supports restitutionary relief. The remainder of Count VI, including injunctive relief, is unchallenged and should proceed.

## V. LMNT SHOULD BE GRANTED LEAVE TO AMEND BEFORE ANY SECTION 1406(a) TRANSFER OR DISMISSAL

Defendants cannot credibly claim not to understand the harm LMNT alleges from their false statements about LMNT's products. Hayden declared that he "cracked the code to going viral" through controversy, and that strategy depends on alarming claims about trusted brands moving consumers. D.I. 1 ¶¶ 1, 46, 107, 119. The Complaint tells Defendants who was lost, how, and why: customers who stopped buying, a sponsor that walked away, and readers who warned others. *Id.* ¶¶ 54-55, 113. Any added detail goes to amount, not notice. Still, if the Court finds any deficiency, or is inclined to transfer under § 1406(a) or dismiss any claim, LMNT requests leave to amend first. Fed. R. Civ. P. 15(a)(2). LMNT can add detail on special damages, its business relationships, and the Delaware readers and customers affected by Defendants' statements. But the facts bearing on venue and personal jurisdiction, such as Oasis's Delaware subscribers and revenue, are in Defendants' hands, so any amendment on those points should follow the limited discovery requested. LMNT would move in accordance with D. Del. L.R. 15.1.

## CONCLUSION

LMNT respectfully requests that the Court deny Defendants' motion.

*Of Counsel:*

Alex Spiro
Renita Sharma
Michael Bloom
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
295 Fifth Avenue
New York, New York 10016
(212) 849-7000

Cory Wroblewski
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
3100 McKinnon St., #1125
Dallas, Texas 75201
(469) 902-3600

DATED: November 2, 2026

*<u>/s/ Michael A. Barlow</u>*
Michael A. Barlow (#3928)
Christine J. Chen (#7499)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
500 Delaware Ave., Suite 1400
Wilmington, Delaware 19801
(302) 302-4000
michaelbarlow@quinnemanuel.com
christinechen@quinnemanuel.com

*Attorneys for Plaintiff Drink LMNT, Inc.*