**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DRINK LMNT, INC.<br><br>Plaintiff,<br><br>v.<br><br>LIVE OASIS, LLC, and<br>CORMAC HAYDEN,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 26-677-JLH |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO TRANSFER AND MOTION TO DISMISS**

OF COUNSEL:

Jeremiah T. Reynolds
Eric C. Pettis
EISNER LLP
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
(310) 855-3200
jreynolds@eisnerlaw.com
epettis@eisnerlaw.com

CONNOLLY GALLAGHER LLP

Alan R. Silverstein (#5066)
1201 North Market Street, 20th Floor
Wilmington, DE 19801
(302) 757-7300
asilverstein@connollygallagher.com

*Attorneys for Defendants
Live Oasis, LLC and Cormac Hayden*

Dated: November 16, 2026

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

- A. Venue Is Improper in Delaware ........ 2
  - 1 Nationwide Readership Is Not a “Substantial Part of the Events” in Delaware ........ 2
  - 2. LMNT’s Own Pleading Places the Challenged Conduct in California ........ 3
  - 3. Discovery and a Hypothetical Amendment Would Not Cure the Defect ........ 4
- B. Alternatively, the Jumara Factors Favor Transfer Under § 1404(a) ........ 5
- C. LMNT Offers No Basis for Personal Jurisdiction over Hayden ........ 6
- D. LMNT’s Opposition Does Not Cure the Pleading Defects ........ 7
  - 1. Count I: The Ratings Are Not “Commercial Advertising or Promotion” ........ 7
  - 2. Count III: LMNT Has Not Specifically Stated Special Damages ........ 8
  - 3. Count IV: LMNT Pleads Neither Knowledge Nor a Probable Expectancy ........ 9
  - 4. Count V: The DTPA Does Not Reach California Conduct ........ 9

III. CONCLUSION ........ 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
873 F.3d 232 (3d Cir. 2017)....................5

*Athletes Foot of Delaware, Inc. v. Ralph Libonati Co., Inc.*,
445 F. Supp. 35 (D. Del 1977)....................3

*Bockman v. First Am. Mktg. Corp.*,
459 F. App'x 157 (3d Cir. 2012)....................2

*Calder v. Jones*,
465 U.S. 783 (1984)....................6

*Ceradyne, Inc. v. RLI Ins. Co.*,
2021 WL 3145171 (D. Del. July 26, 2021)....................5

*Chase Bank USA N.A., v. Hess Kennedy Charterd LLC,*
589 F. Supp. 2d 490 (D. Del. 2008)....................3

*Cottman Transmission Sys., Inc. v. Martino*,
36 F.3d 291 (3d Cir. 1994)....................2, 4

*DaimlerChrysler Corp. v. Askinazi*,
2000 WL 822449 (E.D. Pa. June 26, 2000)....................3

*EIS, Inc. v. WOW Tech Int'l*,
2020 WL 7027528 (D. Del. Nov. 30, 2020)....................8

*Edward Lewis Tobinick, MD v. Novella*,
848 F. 3d 935 (11th Cir. 2017)....................7

*Equidyne Corp. v. Does 1-21*,
279 F. Supp. 2d 481 (D. Del. 2003)....................2, 4

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,
623 F.3d 147 (3d Cir. 2010)....................4

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
763 F. Supp. 3d 1027 (C.D. Cal. 2025)....................5

*GOLO, LLC v. HighYa, LLC*,
310 F. Supp. 3d 499 (E.D. Pa. 2018)....................7, 8

*Hasson v. FullStory, Inc.*,
114 F.4th 181 (3d Cir. 2024) ....................6

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*,
119 F.3d 1070 (3d Cir. 1997)....................6

*Keeton v. Hustler Mag. Inc.*,
465 U.S. 770 (1984)....................3

*Klauder and Nunno Enters., Inc. v. Hereford Assoc., Inc.*
723 F. Supp. 336 (E.D. Pa 1989) ....................3

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ....................9

*Lafferty v. St. Riel*,
495 F.3d 72 (3d Cir. 2007)....................5

*Mitel Networks Corp. v. Facebook, Inc.*,
943 F. Supp. 2d 463 (D. Del. 2013)....................5

*Moberg v. 33T LLC*,
666 F. Supp. 2d 415 (D. Del. 2009)....................6

*Montway LLC v. Navi Transport Services LLC*,
826 F. Supp. 3d 532 (D. Del. 2026)....................8

*Organovo Holdings, Inc. v. Dimitrov*,
162 A.3d 102 (Del. Ch. 2017)....................9

*Parilla v. IAP Worldwide Servs. VI, Inc.*,
368 F.3d 269 (3d Cir. 2004)....................3

*Prosseda v. Windham Grp.*,
772 F. Supp. 3d 517 (D.N.J. 2025) ....................4

*Ryanair DAC v. Booking Holdings Inc.*,
2023 WL 2867476 (D. Del. Apr. 7, 2023)....................8

*Scott Paper Co. v. Nice-Pak Prods., Inc.*,
678 F. Supp. 1086 (D. Del. 1988)....................4

*Sports Eye, Inc. v. Daily Racing Form, Inc.*,
565 F. Supp. 634 (D. Del. 1983)....................5

*Stoltz Mgmt. of Del., Inc. v. Entrata, Inc.*,
2026 WL 252662 (Del. Super. Ct. Jan. 30, 2026) ....................10

*Valnet Inc. v. The Wrap News Inc.*,
2025 WL 3770176 (D. Del. Dec. 31, 2025)....................5

*W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*,
712 F.3d 165 (3d Cir. 2013)....................3

*Walden v. Fiore*,
571 U.S. 277 (2014)....................6

**Statutes**

6 *Del. C.* § 18-109....................1, 6

28 U.S.C. § 1406(a)....................1, 5, 10

**Other Authorities**

Local Rule 9.4(a)....................8

Local Rule 15.1....................4

Fed. R. Civ. P. 9(g)....................8

Fed. R. Civ. P. 12(b)(2)....................7, 10

Fed. R. Civ. P. 12(b)(6)....................10

Fed. R. Civ. P. 15(a)(2)....................4

## I. INTRODUCTION

LMNT's opposition cannot identify a single Delaware event that gave rise to its claims. That is unsurprising: LMNT pleaded that Hayden published the challenged statements from Santa Monica, that the conduct originated in California, and that the resulting injury was the loss of California customers and revenue. Compl. ¶ 170. Having abandoned its residency theory, LMNT relies instead on nationwide availability, travel posts that never place Hayden in Delaware, and proposed discovery into general contacts that cannot establish where the claims arose. The opposition identifies no statement authored in Delaware, publication directed there, Delaware reader influenced, or Delaware transaction lost. None of its arguments overcomes its own pleading.

Venue is therefore improper under § 1391(b)(2), and the action should be transferred under § 1406(a). At minimum, the same facts favor transfer under § 1404(a): no party operates in Delaware, while California is where LMNT alleges the challenged conduct occurred. LMNT likewise offers no basis for jurisdiction over Hayden. It does not defend § 18-109—the only theory pleaded—and instead seeks discovery into Oasis's contacts rather than Hayden's.

The opposition also leaves the merits defects intact. LMNT's Lanham Act theory would convert editorial content into advertising whenever a publisher profits from readership. Its trade-libel allegations identify possible reactions, not a specific loss. Its interference claim substitutes a national customer base for a probable opportunity and knowledge of a particular relationship. And its DTPA theory would transform every internet post viewed in Delaware into Delaware conduct. LMNT also does not oppose dismissal of its UCL restitution request. The Court should transfer the action to California or, if it retains the case, dismiss Hayden and the deficient claims.[1]

---

[1] Capitalized terms have the meanings given in Defendants' Opening Brief (D.I. 10) ("Mot."). LMNT's answering brief (D.I. 16) is referred to herein as the "Opposition" ("Opp.").

## II. ARGUMENT

### A. Venue Is Improper in Delaware

#### 1. Nationwide Readership Is Not a "Substantial Part of the Events" in Delaware

LMNT does not defend venue under § 1391(b)(1). Instead, it relies exclusively on § 1391(b)(2), arguing that because defamation is complete upon publication, venue lies wherever the challenged posts were read. Opp. at 3-5. But Section 1391(b)(2) focuses on where the events giving rise to the claims occurred, rather than where the consequences of those events were felt. *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294-95 (3d Cir. 1994) (venue improper in Pennsylvania where the relevant "omissions . . . actually occurred in Michigan," even though consequences of those omissions were experienced in Pennsylvania).

*Equidyne* applies that rule directly to internet publications. *See Equidyne Corp. v. Does 1-21*, 279 F. Supp. 2d 481, 486-89 (D. Del. 2003). There, a Delaware corporation headquartered elsewhere sued over online statements available in Delaware and relied on that availability for venue. *Id.* at 487. The Court held that the postings' accessibility in Delaware did not establish venue absent evidence that the defendant targeted Delaware residents, because otherwise venue would be proper wherever a posting could be read. *Id.* at 487-89.

Nor does LMNT's injury supply the missing Delaware event. The Complaint alleged that Hayden's "California-based conduct" caused "the loss of California customers and California revenue." Compl. ¶ 170. It alleges no lost Delaware customer, and the Rogers Declaration does not either. Rogers Decl. ¶¶ 2-3. It identifies no Delaware consumer who read the challenged posts, no Delaware transaction affected by them, and no relevant act by Defendants in Delaware. LMNT's sales are its own conduct, not events giving rise to its claims. *See Cottman*, 36 F.3d at 295-96; *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 160-62 (3d Cir. 2012) (rejecting

venue based on the corporations' revenue in the forum and other general contacts because those contacts did not identify where the acts giving rise to the claims occurred).

LMNT's authorities are inapposite. *Keeton* addressed personal jurisdiction, not venue, and rested on the defendant's deliberate sale of 10,000 to 15,000 magazines a month in the forum. 465 U.S. 770, 773-74, 781 (1984). *Athletes Foot* and *Klauder* applied the pre-1990 statute, and *Athletes Foot* found venue improper because no overt act occurred in Delaware. 445 F. Supp. 35, 45 & n.30 (D. Del. 1977); 723 F. Supp. 336, 342-43 (E.D. Pa. 1989). *Chase Bank* and *DaimlerChrysler* involved communications sent into the forum. 589 F. Supp. 2d 490, 501 (D. Del. 2008); 2000 WL 822449, at *4-5 (E.D. Pa. June 26, 2000). None holds that a post available everywhere is a substantial event in a district because it could be read there.

**2. LMNT's Own Pleading Places the Challenged Conduct in California**

LMNT's Complaint answers where the challenged conduct occurred. In support of its UCL claim, LMNT alleged—without qualification and not on information and belief—that "[t]he conduct giving rise to this claim originated in California" and that "Hayden published the false statements about LMNT from Santa Monica, California." Compl. ¶ 170. The Court may hold LMNT to its pleading. *See Parilla v. IAP Worldwide Servs. VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) (factual concessions in complaint are binding judicial admissions). Even an amendment would not erase it: a "superseded pleading may be offered as evidence rebutting a subsequent contrary assertion." *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 172-73 (3d Cir. 2013).

LMNT's screenshots of Hayden's personal posts do not change the analysis. Opp. at 5-7; Carter Decl. ¶¶ 4-7. None places Hayden, or any work on the challenged statements, in Delaware. Whether Hayden was in Santa Monica or abroad when the posts went live, LMNT does not contend he was in Delaware, and the posts say nothing about Delaware.

### 3. Discovery and a Hypothetical Amendment Would Not Cure the Defect

LMNT asks the Court to defer transfer while it takes discovery into Oasis's Delaware subscribers, downloads, and revenue, and then permit amendment to cure the Complaint's deficiencies. Opp. at 7, 10-11, 20. Subscriber counts, downloads, and revenue would show, at most, that some Delaware residents use Oasis's nationwide app. That is a general contact with the forum, not an event giving rise to LMNT's claims, and it would not link any Delaware user to the challenged posts. *Cottman*, 36 F.3d at 294; *Equidyne*, 279 F. Supp. 2d at 487-89; *see also Scott Paper Co. v. Nice-Pak Prods., Inc.*, 678 F. Supp. 1086, 1089-90 (D. Del. 1988) (sales reaching Delaware through national retailers did not establish venue absent the defendant's control over distribution).

Discovery into Hayden's whereabouts would fare no better. Opp. at 7. LMNT alleged that he published the statements from Santa Monica, and LMNT's own exhibits show him abroad, not in Delaware. Compl. ¶ 170; Hayden Decl. ¶¶ 4-5; Carter Decl. ¶¶ 5, 7. LMNT identifies no particularized basis to believe discovery could uncover a claim-generating Delaware event, which makes its request the "fishing expedition based only upon bare allegations" that this circuit cautions against. *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010).

Nor does LMNT's stated intention to amend justify delay. Opp. at 20. No amendment is before the Court; LMNT has neither moved under Rule 15(a)(2) nor submitted the proposed pleading and redline as Local Rule 15.1 requires. *See Prosseda v. Windham Grp.*, 772 F. Supp. 3d 517, 522 n.2 (D.N.J. 2025) (declining a request in an opposition brief to add venue allegations and transferring the case). And LMNT says what it would add: Delaware readers, users, and

purchasers. Opp. at 19-20. But those are the same nationwide-readership facts that do not establish venue in the first place.

### B. Alternatively, the *Jumara* Factors Favor Transfer Under § 1404(a)[2]

LMNT's response to convenience transfer rests almost entirely on its choice of forum and the parties' Delaware formation. Opp. at 7-9. But LMNT's choice receives diminished weight because it sued far from its Florida headquarters and the operative events occurred elsewhere, *Sports Eye, Inc. v. Daily Racing Form, Inc.*, 565 F. Supp. 634, 637-39 (D. Del. 1983), and Delaware formation does not tip the balance where no party has offices, employees, or operations here, *Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 470-71, 475-76 (D. Del. 2013).

LMNT dismisses Defendants' convenience as the concern of "one person" who works remotely. Opp. at 8. That person is a defendant, and Oasis operates from California. Hayden Decl. ¶¶ 2-3; *see Valnet Inc. v. The Wrap News Inc.*, 2025 WL 3770176, at *1 (D. Del. Dec. 31, 2025) (transfer to California where no party was physically in Delaware and events giving rise to claims occurred in California). California's local interest, moreover, does not depend on whether the posts "concern" California. Opp. at 9. It arises because the challenged conduct was undertaken there by California-based Defendants. Compl. ¶ 170; *Ceradyne, Inc. v. RLI Ins. Co.*, 2021 WL 3145171, at

---

[2] LMNT's preference for transfer under § 1404 appears driven by its limitations exposure. Opp. at 3 n.2. A § 1406(a) transferee court applies its own choice-of-law rules, *Lafferty v. St. Riel*, 495 F.3d 72, 76-77 (3d Cir. 2007), and LMNT does not answer Defendants' showing that California's one-year limitations period and single-publication rule bar Count II as to the December 16, 2024 publication. Mot. at 18-20. It merely "reserves all arguments" in a footnote. Opp. at 3 n.2. A bare reservation in a footnote preserves nothing. *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 873 F.3d 232, 237 (3d Cir. 2017); *In re Genius Brands Int'l, Inc. Sec. Litig.*, 763 F. Supp. 3d 1027, 1049 (C.D. Cal. 2025) ("arguments raised only in footnotes … are generally deemed waived and need not be considered").

*8 (D. Del. July 26, 2021) ("when the alleged wrongdoing occurs in another jurisdiction . . . the other jurisdiction has a stronger interest in deciding the dispute").

LMNT's opposition does not overcome California's stronger connection to the parties and the dispute, and the *Jumara* balance therefore favors transfer.

**C. LMNT Offers No Basis for Personal Jurisdiction over Hayden**

LMNT pleaded one basis for jurisdiction over Hayden: his status as Oasis's managing member under 6 *Del. C.* § 18-109. Compl. ¶ 26. The opposition does not defend that theory, purporting only to "preserve" it in a footnote, which preserves noting. Opp. at 11 n.7; *see John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived").

Instead, LMNT requests discovery into Oasis's Delaware subscribers, downloads, and revenue. Opp. at 10-11. But that request fails for a basic reason: the facts LMNT wants to explore are Oasis's, and Oasis has not contested jurisdiction. "Each defendant's contacts with the forum State must be assessed individually," *Calder v. Jones*, 465 U.S. 783, 790 (1984), and the inquiry "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there," nor to the plaintiff's injury there. *Walden v. Fiore*, 571 U.S. 277, 285-86, 290 (2014). LMNT does not hypothesize a single Delaware act by Hayden—no travel, no contract, no communication sent there—so no amount of discovery into Oasis's customer list can supply one.

*Moberg*, *see* Opp. 10-11, is not to the contrary: there, the defendant's own website commerce was the infringing conduct, so discovery into that commerce went to the claim. *Moberg v. 33T LLC*, 666 F. Supp. 2d 415, 427-28 & n.18 (D. Del. 2009). Here the challenged conduct is Oasis's publication to a national audience, which does not establish express aiming at Delaware. *Hasson v. FullStory, Inc.*, 114 F.4th 181, 190-92 (3d Cir. 2024). And Hayden's declaration attests

that Oasis has no Delaware office, operations, or employees; no Delaware-specific activity relating to LMNT; and the publications were not directed at Delaware. Hayden Decl. ¶¶ 3-5. LMNT offers no contrary fact, and the claims against Hayden should be dismissed under Rule 12(b)(2).

### D. LMNT's Opposition Does Not Cure the Pleading Defects

#### 1. Count I: The Ratings Are Not "Commercial Advertising or Promotion"

LMNT's real argument is that the challenged statements were "a customer acquisition tool" because alarming content drew downloads, and Hayden said as much. Opp. at 13; Compl. ¶¶ 39, 43, 46. Accepting that theory, it only describes a publisher whose content attracts an audience, which is the economic motive of every newspaper, magazine, and review site. The statements do not promote an Oasis subscription or a competing product, and they propose no commercial transaction—they contain no link, offer, price, or request to download or subscribe. Compl. ¶¶ 47-48, 91. At most, LMNT alleges that Oasis has an economic interest in attracting readers. The cases draw the line at precisely that point.

LMNT's attempts to distinguish *Tobinick* and *GOLO* fail. Opp. at 14. *Tobinick v. Novella* rejected the proposition that a publisher's surrounding advertising and subscription model transform informative content into commercial speech. 848 F.3d 935, 951-52 (11th Cir. 2017). LMNT invokes those same features—affiliate links and paid subscriptions—to support its Lanham Act claim. Compl. ¶¶ 3, 38-40. But those features show only that Oasis profits from readership, not that its ratings are advertisements. *Tobinick*, 848 F.3d at 952 (article does not become commercial speech merely because it attracts readers to a profit-generating publication).

*GOLO v. HighYa, LLC* likewise defeats LMNT's theory. It held product reviews noncommercial because they promoted no competing product and proposed no transaction. *GOLO, LLC v. HighYa, LLC*, 310 F. Supp. 3d 499, 504-05 (E.D. Pa. 2018). The corrections, disclosures,

and revenue neutrality LMNT identifies in its Opposition had nothing to do with that holding. *See* Opp. at 14. The court discussed them only when rejecting a separate theory that the review sites were covert fronts for competitors. *GOLO*, 310 F. Supp. 3d at 505-07. In any event, LMNT alleges those same facts here: Oasis issued corrections and retractions, disclosed its affiliate links, and earns commission whether a consumer buys LMNT or another product. Compl. ¶¶ 3, 38, 40-41, 92-95.

LMNT's reliance on *EIS* only sharpens the distinction by illustrating when purported commentary crosses the line into commercial speech. 2020 WL 7027528, at *4-5 (D. Del. Nov. 30, 2020). There, a direct competitor allegedly paid an influencer to post about the parties' competing products and planted sham Amazon reviews through an account displaying its logo and linking to its own website, where consumers could purchase its competing products. *Id.* LMNT alleges no comparable arrangement: no concealed sponsor, no competing product Oasis sells, and no product-specific financial interest behind the challenged ratings. *See* Compl. ¶ 38.

LMNT has failed to allege "commercial advertising or promotion," and Count I should be dismissed.

**2. Count III: LMNT Has Not Specifically Stated Special Damages**

LMNT answers Rule 9(g) with the wrong rule. Local Rule 9.4(a) bars demanding a specific sum; Rule 9(g) separately requires the items of special damage to be "specifically stated." LMNT need not quantify its loss; but it must identify what it lost. It does not. Concerned consumers, unspecified avoided purchases, and an unnamed sponsor that "declined to move forward" on undisclosed terms only describe how loss ***might have*** occurred. Compl. ¶¶ 54-55, 150, 156. LMNT's cases, on the other hand, involved identifiable losses. *Ryanair DAC v. Booking Holdings Inc.*, 2023 WL 2867476, at *2-3 (D. Del. Apr. 7, 2023) (lost revenue from established repeat customers); *Montway LLC v. Navi Transport Services LLC*, 826 F. Supp. 3d 532, 541, 543 (D.

Del. 2026) (alleging significantly fewer orders, lost bookings, and lost profits following a platform suspension). LMNT identifies no comparable lost customer, sale, order, or revenue. Count III should be dismissed.

### 3. Count IV: LMNT Pleads Neither Knowledge Nor a Probable Expectancy

LMNT defends its tortious-interference claim by arguing that an unidentified sponsor and customer reactions establish reasonably probable business opportunities. Opp. at 17-18. They do not. The customer allegations describe only reactions to the challenged posts, while the sponsorship allegation states merely that an unidentified sponsor "declined to move forward," without identifying the stage of discussions, any proposal or terms, or other facts showing a probable deal rather than a possible one. Compl. ¶¶ 54-55, 153, 156. LMNT's attempt to characterize these as examples of interference with its "national customer base" merely returns to the "nebulous, unascertainable class" *Organovo* rejected. *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 122-23 (Del. Ch. 2017) (complaint identified no specific relationship harmed).

LMNT also argues that the knowledge element is satisfied because Defendants knew LMNT had customers. Opp. at 18. General awareness that a company has customers is not knowledge of a particular relationship. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153, 1165-66 (2003). If it were, the element would disappear from every interference claim against an operating business. That knowledge "may be alleged generally," *see* Opp. at 18, does not relieve LMNT of plausibly alleging it. Because the Complaint alleges neither a reasonably probable opportunity nor Defendants' knowledge of one, Count IV fails.

### 4. Count V: The DTPA Does Not Reach California Conduct

LMNT argues that a representation is "made" wherever it is received. Opp. at 18-19. That conflates where a tort is completed with where the challenged conduct occurred. LMNT pleads

that Defendants published the statements from California and identifies no deceptive act undertaken in Delaware. Compl. ¶ 170. Treating downstream receipt of nationwide content as Delaware conduct would give the DTPA nationwide reach: any internet post viewed by a Delaware resident would fall within the statute. The DTPA does not extend that far. *See Stoltz Mgmt. of Del., Inc. v. Entrata, Inc.*, 2026 WL 252662, at *13 (Del. Super. Ct. Jan. 30, 2026) (dismissing a DTPA claim because the alleged conduct occurred outside Delaware, notwithstanding both parties' Delaware incorporation). And if the place of injury mattered, Opp. at 19, LMNT's injury was felt at its Florida headquarters or, on its own pleading, in California. Compl. ¶¶ 19, 170.

## III. CONCLUSION

Defendants respectfully request that the Court transfer this action to the Central District of California under 28 U.S.C. § 1406(a), or alternatively § 1404(a). If the Court retains the action, it should dismiss the claims against Hayden under Rule 12(b)(2), dismiss Counts I, III, IV, and V under Rule 12(b)(6), and dismiss Count VI's restitution request, which LMNT does not oppose. Opp. at 20.

CONNOLLY GALLAGHER LLP

/s/ *Alan R. Silverstein*
Alan R. Silverstein (#5066)
1201 North Market Street, 20th Floor
Wilmington, DE 19801
(302) 757-7300
asilverstein@connollygallagher.com

*Attorneys for Defendants*
*Live Oasis, LLC and Cormac Hayden*

OF COUNSEL

Eric C. Pettis
Jeremiah Reynolds
Eisner, LLP
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
(310) 855-3200
epettis@eisnerlaw.com
jreynolds@eisnerlaw.com

Dated: November 16, 2026